UNITED STATES, Appellee

v.

EMSLEY SMITH, Stewardsman, U. S. Navy, Appellant

3 USCMA 336, 12 CMR 92

LCDR John J. Nelson, USNR, for Appellant.
CDR Robert F. Milota, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused pleaded guilty to one specification of forgery in violation of Article 123, Uniform Code of Military Justice, 50 USC § 717. The court-martial, on August 28, 1952, imposed the following sentence:

"To be reduced to the rating of steward recruit, to be dishonorably discharged from the service, to be confined at hard labor for one year, and to forfeit all pay and allowances *during confinement and until release therefrom.*" [Emphasis supplied].

On October 17, 1952, the convening authority took the following action with regard to the above sentence:

". . . only so much of the sentence as provides for reduction to the rating of steward recruit, discharge from the service with a bad-conduct discharge, confinement at labor for four (4) months, and forfeiture of fifty dollars ($50) per month during the period of confinement and until release therefrom, is approved. The forfeitures shall apply to pay becoming due on and after date of this action."

The board of review affirmed the findings and sentence as modified and The Judge Advocate General of the Navy has certified the cause to us. He seeks a determination of two questions:

"(a) Is that part of the sentence legal which provides: 'to forfeit all pay and allowances during confinement and until release therefrom'?

"(b) If the question in (a) above is answered in the affirmative, what is the legal effect of that part of the convening authority's action which provides: 'The forfeitures shall apply to pay becoming due on and after date of this action'?"

It is to be noted that the first question certified does not request a ruling on the legality of the sentence as modified by the convening authority, but seeks a determination of the validity of the original sentence imposed by the court-martial. We assume The Judge Advocate General of the Navy has some reason for questioning the authority of the court to impose the particular sentence, but if there was error and it was corrected by the convening authority, the question is not of importance to a disposition of this case. However, because both sentences are subject to the same criticism we will consider each.

The first contention questions the legality of the sentences in that they fail to comply with the requirements of paragraph 126h(1) of the Manual for Courts-Martial, United States, 1951, which provides:

"To be effective any forfeiture, fine, or detention of pay must be adjudged in express terms. Loss of pay shall be stated in dollars or dollars and cents, not in days' pay (see app. 13). In determining the amount of a forfeiture or fine, particularly a large fine, the court should consider the ability of the accused to pay."

This contention must be overruled. "Express" is defined in Black's Law Dictionary as follows: "Clear, definite, and explicit. Set forth in words, manifested by direct and appropriate language as distinguished from that which is inferred from conduct." The

sentence returned by the court-martial provided for a dishonorable discharge, confinement at hard labor for one year, and forfeiture of all pay and allowances during confinement and until release therefrom. Laying aside for the moment a question concerning any possible difference between "during confinement" and "during confinement adjudged," each severable part of that sentence is definite with the possible exception of the length of time the forfeitures are to continue. It is argued that this renders the sentence so uncertain that it is invalid. This argument is hardly thought to deserve elaborate consideration. The time of confinement is fixed at one year and the forfeitures would apply for that period less any time earned for good behavior. The only uncertainty that could arise about good time allowance would be the doubt about accused's good conduct. Although somewhat uncertain at the time imposed, the sentence will be made certain by an event which must happen. That is not the uncertainty which will void a sentence.

The same reasoning can be applied to the sentence as approved by the convening authority. The imposition of a bad-conduct discharge and confinement at hard labor for four months is definite, certain and not dubious. The amount of money per month to be forfeited is likewise expressed clearly. Again the uncertainty is only as to the length of time the forfeitures of pay and allowances will be effective. As will be later developed, it could not exceed the period of four months and it might be less depending upon good time. That portion of a sentence which is remitted for good behavior is well known to the military authorities and so the period of forfeitures can be clearly ascertained. This makes the sentence definite enough to withstand a broadside attack against its legality.

There is one further contention which we must dispose of to answer completely the first question. The ▮ sentences have the phrases "during confinement and release therefrom," and "during the period of confinement and until release therefrom." These must be interpreted to mean "during the confinement *adjudged*" and "the period of confinement *adjudged*" and release therefrom. This for the reason that there are provisions in the Manual which, under certain circumstances, permit an accused to be held in confinement awaiting the outcome of his case on appeal. We considered the legal effect of those provisions in United States v. Teague, 3 USCMA 317, 12 CMR 73, decided this date, and held that an accused could be placed in arrest to await action of higher headquarters after he served out the period of confinement required by his sentence. We do not consider confinement under those circumstances to have any effect on forfeitures. Therefore, in order to prevent what is claimed might be uncertainty, we interpret the forfeitures to continue only so long as the confinement adjudged in the sentence is being served. The general rule of construction is that where a judgment can be interpreted in two ways—one which renders it legal and one which makes it illegal—the interpretation which supports its validity must be adopted. Accordingly, the first question is answered in the affirmative.

The answer to the second question is in part controlled by our holding in United States v. Watkins, 2 USCMA 287, 8 CMR 87, decided March 9, 1953. We stated there, after considering Articles 57 and 73 of the Uniform Code, 50 USC §§ 638 and 660, that the portion of the sentence which imposed forfeitures, could be executed prior to completion of appellate review because the bad-conduct discharge was suspended by the convening authority. Article 71 (c) and (d) of the Code, 50 USC § 658, provides:

"(c) No sentence which includes, unsuspended, a dishonorable or bad-conduct discharge, or confinement for one year or more shall be executed until affirmed by a board of review and, in cases reviewed by it, the Court of Military Appeals.

"(d) All other court-martial sentences, unless suspended, may be ordered executed by the convening authority when approved by him. The

**339**

convening authority may suspend the execution of any sentence, except a death sentence."

Under the view expressed in Watkins, *supra*, Article 71(c) of the Code was held to be inapplicable in those cases where a bad-conduct discharge was suspended, and if the convening authority saw fit to take that action, the provisions of Article 71(d) would control and execution on the forfeitures could be ordered by the convening authority when the sentence was approved by him.

We are posed with a slightly different problem in this instance because the convening authority did not suspend the execution of the bad-conduct discharge and the right to execute on any part of the sentence must await action by this Court. That, however, does not dispose of the issue, as the convening authority did not order execution, he merely provided that forfeitures should apply to pay becoming due on and after the date of his action. To determine the effect of that part of the sentence, it is necessary that we consider Article 57 of the Code, *supra*. Subsections (a) and (b) provide:

"(a) Whenever a sentence of a court-martial as lawfully adjudged and approved includes a forfeiture of pay or allowances in addition to confinement not suspended, the forfeiture may apply to pay or allowances becoming due on or after the date such sentence is approved by the convening authority. No forfeiture shall extend to any pay or allowances accrued before such date.

"(b) Any period of confinement included in a sentence of a court-martial shall begin to run from the date the sentence is adjudged by the court-martial, but periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement."

The approved sentence in this case includes a forfeiture of pay in addition to confinement not suspended, and so in accordance with section (a) the forfeitures can be applied to pay or allowances becoming due on or after the date of approval by the convening authority. That date cannot be used as the com-

**340**

mencement time for confinement, as section (b) provides that period begins to run from the date the sentence is adjudged by the court-martial. The accused was found guilty on August 28, 1952, but for reasons unknown to us the sentence was not approved by the convening authority until October 17, 1952. Because of the time intervening between those two dates, the amount of money involved is of some moment.

Taking the above-quoted provisions of the Manual as our formulae, we arrive at the following results: The period of confinement was for four months starting on August 28, 1952. Without good time the period would be served on December 27, 1952. We are informed by counsel for the United States, and this information is consistent with the finding of the board of review, that the good conduct credit for a sentence of this length is twenty days. Accordingly, the accused, if his conduct was such that he had not earned good time, would, by serving up to December 28, 1952, satisfy fully that portion of the sentence imposing confinement. But, if he was entitled to credit for good behavior, he would serve in full by December 7, 1952.

A somewhat different period of time is involved in the forfeitures. Because the sentence included a bad-conduct discharge, execution of the forfeitures could not be imposed until final appellate review. This, however, does not mean that some action could not be taken by the convening authority to assure collecting the forfeitures when the time arrived to execute. We believe that Article 57 of the Code is expressly worded to authorize a sentence which will permit an orderly, and at the same time, a fair method of collecting forfeitures. It may amount to no more than a bookkeeping entry but there is a difference between applying forfeitures and executing them. Application can commence on the date the convening authority acts even though execution must be deferred until completion of appellate review. Article 57 of the Code provides that forfeitures

may be applied to all pay and allowances becoming due on and after the date the sentence is approved by the convening authority but not before that time. That date in this instance was October 17, 1952, and it controls the commencement of the forfeitures.

Having determined the starting and ending period of confinement and the starting period of the forfeitures, it then becomes necessary to determine the date the forfeitures must cease. The court-martial provided for total forfeitures during confinement and until release therefrom. In view of the fact the dishonorable discharge was imposed, together with confinement for one year, total forfeitures for that period could be imposed. The convening authority modified the terms of the original sentence but he did not change substantially the requirement that forfeitures should apply during confinement and until release therefrom. As we stated when discussing the first question, to prevent any difficulties arising in connection with confinement, we must interpret this phrase to mean during the period of confinement mentioned in the sentence. Under that interpretation, the forfeitures would run up to and including the 27th day of December 1952 less whatever good time the accused had earned. If he was entitled to full credit, then the forfeitures would commence on October 17, 1952, and terminate on December 7, 1952. This disposes of the second question.

The decision of the board of review is affirmed and the case is returned to The Judge Advocate General of the Navy for action consistent with the views announced herein.

Chief Judge QUINN concurs.

Judge BROSMAN concurs in the result.