UNITED STATES, Appellant

v

ELTON VARNADO, Sergeant, U. S. Marine Corps, Appellee

7 USCMA 109, 21 CMR 235

110

No. 8158

Decided June 1, 1956

*Captain Charles R. Larouche,* USMC, argued the cause for Appellant, United States.

*Captain R. D. Humphreys,* USMC, argued the cause for Appellee, Accused. With him on the brief were *Lieutenant (jg) Alan J. Hartnick,* USNR, and *Captain Daniel B. Hunter,* USMC.

## Opinion of the Court

George W. Latimer, Judge:

The accused, having pleaded guilty before a general court-martial to the larceny of property belonging to the United States, in violation of Article 108, Uniform Code of Military Justice, 50 USC § 702, was sentenced to bad-conduct discharge, total forfeitures, confinement for six months, and reduction to the grade of private. The convening authority took the following action on the sentence:

"In the foregoing case of Elton (n) Varnado, sergeant, U. S. Marine Corps, tried by general court-martial on 26 November 1955, only so much of the sentence as provides for a Bad

Conduct Discharge, forfeiture of fifty dollars ($50.00) per month for six (6) months, confinement at hard labor for six (6) months, and reduction to the grade of private is approved and ordered executed but those portions of the sentence pertaining to a Bad Conduct Discharge, *confinement at hard labor for six (6) months,* and reduction to the grade of private are suspended for a period of six (6) months, at which time, unless the suspension is sooner vacated, *the sentence* will be remitted without further action.

"The forfeitures shall apply to pay and allowances becoming due on and

after the date of this action." [Italics supplied.]

On review, a board of review in the office of The Judge Advocate General of the Navy held that because the accused had been confined for fourteen days prior to the date of the convening authority's action, his act of suspending execution of the entire period of confinement for six months constituted an increase in the severity of the sentence; that his statement "the sentence will be remitted without further action" constituted a suspension of the execution of the forfeiture for a probationary period and provided for its subsequent remission; and that his directive applying the forfeiture to pay becoming due on and after the date of his action was illegal and without force and effect. Therefore, the board, one member dissenting, affirmed only a bad-conduct discharge, confinement for five months and sixteen days, partial forfeitures, the reduction in rank, and suspension of the whole sentence for six months. Thereupon, The Judge Advocate General of the Navy certified the following three questions to this Court:

"(a) Did the action of the convening authority in suspending execution of the entire period of confinement on probation constitute an increase in the severity of the sentence?

"(b) Did the action of the convening authority constitute a suspension of the execution of forfeitures for a probationary period?

"(c) Was the directive of the convening authority applying forfeitures to pay coming due on and after the date of his action legal?"

II

In so far as the first issue is concerned, the board of review reasoned that the convening authority had increased the severity of the punishment by suspending the term of confinement for a period of six months. The board reached that result by contending that the reviewing officer had attempted to delay the beginning date of the period of confinement, thus lengthening the term by the number of days elapsing between the date of trial and the date he acted, which in this case was fourteen days. We find such reasoning to be so strained and untenable that we reject it in toto, particularly, when as here, we are confronted with a gratuitous act of clemency on the part of the officer spelled out in language which leaves no doubt about his purpose and intent.

Paragraph 97a of the Manual for Courts-Martial, United States, 1951, provides that a sentence, or any of its parts, may be suspended by a convening authority for a period longer than the term of confinement, but within the period of accused's service. By statute, any period of confinement included in a sentence adjudged by a court-martial begins to run from the date the sentence is imposed by the court-martial, but periods during which the term of confinement is suspended must be excluded in computing the service of the term. Article 57(b), Uniform Code of Military Justice, 50 USC § 638; United States v Watkins, 2 USCMA 287, 8 CMR 87. The convening authority, therefore, could prescribe the period of suspension, but he could not require the accused to again serve the fourteen days for which he was entitled to credit, and, in our view, he did not purport to do so. His action must be considered in the light of the record of trial before him, and, when his writing is interpreted rationally, it merely directs the suspension of the confinement adjudged, which, at the time when it was assessed, was for a term of six months. This is the natural unforced construction of his language, and when so interpreted, renders his action wholly legal in every respect. Even if we were to assume, arguendo, that his language was doubtful and his intent not expressed clearly, we would encounter no difficulty in our interpretation. In United States v Smith, 3 USCMA 336, 12 CMR 92, we indicated our preference when presented with a similar sort of choice, saying:

". . . The general rule of construction is that where a judgment can be interpreted in two ways—one which renders it legal and one which

112

makes it illegal—the interpretation which supports its validity must be adopted."

When we look beyond the argument over semantics, the matter in issue really resolves itself into a question of whether the accused is entitled to be credited with the time he has served if the suspension of the execution of the sentence is subsequently vacated. The law states that he is, and we need not assume that any commander would disregard the law in that regard. Therefore, whether we consider the language unambiguous and not subject to judicial interpretation, or whether we apply the last quoted rule to the convening authority's act in this case, it makes little difference, for, in either event, the action taken did not increase the severity of the punishment. Accordingly, the first issue must be answered negatively.

### III

Turning to the second certified issue, it was the notion of the board of review that the convening ▪ authority's action was couched in ambiguous language, at least that portion dealing with the forfeitures of pay; that this ambiguity must be resolved in favor of the accused; and that this purpose should be achieved by directing the suspension of the entire sentence. Perhaps we would be willing to accept the reasoning used by the two board members if we were as certain as they of the validity of their premise. However, we simply have been unable to detect any ambiguity in the words and phrases employed by the convening authority. It is conceded by the board in its majority opinion that the sentence is composed of four parts, and that the parts are severable. Clearly the convening authority approved the four separate penalties included in the sentence to the degree he found appropriate. Those affirmed punishments were the punitive discharge, confinement, forfeitures of pay, and reduction in rank. Thereafter, the reviewing officer decreed that execution was to be suspended on three of the four specific parts of the sentence he had approved. A comparison of the provisions approv-

ing the sentence and those suspending its execution will establish that the forfeiture was the only item approved which was not suspended. No doubt the board of review would have reached a different result if the action as spelled out by the reviewing officer had not contained one additional provision. But a majority of the members seized upon the next phrase, "at which time, unless the suspension is sooner vacated, the sentence will be remitted without further action," to find an ambiguity. In doing so, the board used rather tenuous reasoning, for the content of the word "sentence" must be considered in the light of the other language employed by the officer. When we consider his complete action, it is obvious to us that, in using the quoted phrase, the convening authority was dealing only with the particular punishments he had ordered suspended. True enough, his phraseology did not follow precisely the form provided in the Manual, Appendix 14, No. 5, in that he directed the ultimate remission of the sentence, instead of specifying each part remitted, but the word he chose to use was immediately preceded by the provision, "unless the suspension is sooner vacated," which, in turn, had reference to the items specifically suspended. Furthermore, as a matter of simple construction, we must interpret the action decreed by him, if reasonably possible, to give effect to all words and phrases. United States v McDaniel, 7 USCMA 56, 21 CMR 182. The last sentence found therein provides that the forfeiture shall apply to pay and allowances becoming due on and after the date of the action, and it would seem to be quite unnecessary to include that provision if it was to be suspended for six months and thereafter remitted. However, pretermitting any canon of construction, the partial forfeiture approved by the convening authority was not one of the items specifically suspended by him, and it therefore follows that it was not to be remitted at the end of the probationary period. For the foregoing reasons, we conclude that the convening authority's action cannot be construed to constitute a suspension of the forfeiture.

**113**

## IV

The third certified issue presents a more difficult question. It is clear that the convening authority attempted to order immediate execution of the partial forfeitures, but whether he is authorized to do so, when the confinement adjudged is suspended by him, depends upon the construction of two Articles of the Code. We have held previously that he may order execution of partial forfeitures immediately upon his approval of the sentence if his action affirms confinement unsuspended, even though he suspends an adjudged punitive discharge pending appeal. United States v Watkins, supra. Furthermore, we have held that forfeitures could be applied to pay becoming due on and after the date of his action, where the sentence also includes confinement and a punitive discharge, neither suspended. United States v Smith, supra. But we are now faced with answering the argument that Article 57(a) of the Code, 50 USC § 638, forbids the execution of forfeitures until after the completion of appellate review, where the approved sentence includes suspended confinement. After careful consideration, we have concluded the assertion must be rejected as untenable.

Article 57 of the Code deals with the effective dates of sentences, and subsection (a) provides as follows:

"Whenever a sentence of a court-martial as lawfully adjudged and approved includes a forfeiture of pay or allowances in addition to confinement not suspended, the forfeiture may apply to pay or allowances becoming due on or after the date such sentence is approved by the convening authority. No forfeiture shall extend to any pay or allowances accrued before such date."

Standing alone, this provision seems to support the interpretation asserted by the accused, but it must be read together with Article 71 of the Code, 50 USC § 658, which provides, in part, that the convening authority may order executed, at the time of his approval, all sentences except those which extend to death, involve a general or flag officer, dismissal of an officer, or include, unsuspended, a punitive discharge or confinement for one year or more. It thus becomes apparent that Article 71 of the Code contains a positive declaration that forfeitures may, under certain circumstances, be ordered executed at the time the sentence is acted on by the convening authority. On the other hand, only by construction can it be inferred that Article 57 provides that if confinement is suspended, execution of a forfeiture may not be ordered until appellate processes have been completed. As a matter of common deduction, if the law states a forfeiture may be executed at the time of the approval of the sentence, the convening authority has the authority to make it apply to pay and allowances becoming due on that date or thereafter. Therefore, it would appear to us that the specific grant of power found in Article 71 to the effect that the convening authority may order the execution of forfeitures at the time of his action, even though he suspends the adjudged confinement, is a strong rod to support our conclusion. Were we to reach a contrary result, we would have to bottom our holding on a finely spun theory that, by implication, Article 57 forbids execution. We prefer the former.

The Manual draftsmen must have construed the Code in a similar vein. They, too, seem to have formed the opinion that the convening authority could order the immediate execution of partial forfeitures, while at the same time suspending the term of confinement. We find support for that conclusion expressed in paragraph 88e(1) of the Manual, supra, which provides for sentence suspensions by convening authorities. Among other things it states:

"A part of a sentence should not be suspended if it would be contrary to the customs of the service to execute the portion of the sentence that remains unsuspended. For example, with respect to a sentence of dishonorable or bad conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor, it would be contrary to the customs of the service to suspend

the execution of the punitive discharge and the confinement and order the total forfeitures into execution."

It would seem to us that unless a convening authority had the power to suspend all parts of the sentence except the forfeitures, and order them executed, it would have been unnecessary in the Manual to mention any custom of the service in regard to total forfeitures. For the purpose of this case we are willing to accept the premise that a sentence should not be modified so that an enlisted man is performing his military duty without some remuneration, but that reason does not apply when partial forfeitures are decreed. Certainly, if pay may be partially forfeited when confinement is suspended, no unusual hardship is placed on an accused, for there is little practical difference to him whether the money is taken before or after the sentence is finally affirmed. He is outside the bastille in either event, and, in this instance, it is worth noting that the action taken does not offend against the declared custom, for here only partial forfeitures were ordered executed.

In terms of logic and benefit to an accused, there is no good reason why the convening authority should be denied the power to do what he sought to do here. He is authorized to order forfeitures executed immediately if he does not suspend the confinement adjudged, United States v Watkins, supra, and we are sure that the suspension of a penal term is of substantial benefit to one sentenced to confinement. A convening authority should be encouraged to exercise clemency in proper cases, but if, in order to suspend the execution of confinement he must defer forfeitures, he may be reluctant to extend this benefit to an accused. We, therefore, conclude the convening authority had the power to make the approved partial forfeitures effective as of the date of his action, thus answering the third certified issue in an affirmative manner.

The decision of the board of review is reversed. The record is returned to the The Judge Advocate General of

the Navy for reference to a board of review, which will take action not inconsistent with this opinion.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

I concur generally in the majority opinion. I would agree entirely were it not for the fact that the majority implies that there is a conflict between Article 57 and Article 71 of the Uniform Code of Military Justice, 50 USC §§ 638 and 658, respectively. In my opinion there is no conflict whatever. Article 57, Uniform Code, supra, was intended to authorize the convening authority to determine, in the interests of justice, when forfeitures should become effective. Previously, in a case in which the sentence had to be reviewed and approved by higher authority before it could be ordered into execution, the pay and allowances which accrued to the accused during confinement were not subject to forfeiture. In other words, the adjudged forfeiture was not effective until the sentence was executed. Article 57, Uniform Code, supra, changed that practice.

The draftsmen of the Uniform Code of Military Justice determined it to be "appropriate that where an accused is sentenced to both forfeiture and confinement, the forfeiture should reach all pay coming due while the accused is in confinement awaiting final approval of the sentence." House Report 491, 81st Congress, 1st session, page 27. It is clear, therefore, that Article 57, Uniform Code, supra, is not a limitation on, but an extension of, the convening authority's power over the sentence. It relates to his authority to approve the sentence, and it confers upon him the right to fix the effective date of the forfeitures as of the time of his action, regardless of whether or not he suspends the adjudged period of confinement. Article 57, supra, does not relate in any way to the conditions under which a sentence may be ordered executed. As we pointed out in United States v McDaniel, 7 USCMA 56, 21 CMR 182, approval and execution of a sentence are distinct legal events.