UNITED STATES, Appellant

v

JOSEPH W. BUTTS, JR., Seaman, U. S. Navy, Appellee

7 USCMA 472, 22 CMR 262

No. 8504

Decided January 4, 1957

*Major Charles R. Larouche,* USMC, argued the cause for Appellant, United States. With him on the brief was *Lieutenant Commander Robert R. Marsh,* USNR.

*Commander Gay E. Milius, Jr.,* USN, argued the cause for Appellee, Accused. With him on the brief was *Major Gerould M. Rumble, Jr.,* USMC.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of failing to go to his appointed place of duty, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. It imposed a sentence which includes a bad-conduct discharge. The convening authority reduced the adjudged period of confinement to thirty days, and, except for the part providing for a punitive discharge, ordered the sentence executed. Execution of the discharge was suspended until the accused's release from confinement or completion of appellate review, whichever is the later date.

In accordance with Article 65(b) of the Uniform Code, 10 USC § 865, the record of trial was reviewed by the officer exercising general court-martial jurisdiction. In pertinent part, his action is as follows:

". . . the sentence, as approved, mitigated and suspended by the convening authority, is approved, but execution of that portion thereof adjudging bad-conduct discharge is suspended for six (6) months, at which time, unless the suspension is sooner vacated, the bad-conduct discharge will be remitted without further action. *However, the suspension will not become effective unless the conduct of the accused has been satisfactory to his commanding officer between the date of trial and the date of this action.*" [Emphasis supplied.]

On further review a board of review held that the *italicized* part of his action constituted an illegal delegation of his authority and was, therefore, void. As authorized by Article 67(b)(2) of the Uniform Code, 10 USC § 867, the Acting The Judge Advocate General of the Navy requested this Court to consider the following question:

"Was the action of the officer exercising general court-martial jurisdiction over the command conditionally suspending the bad conduct discharge legal and effective to accomplish its intended purpose wherein it

**473**

provided '. . .' the suspension will not become effective unless the conduct of the accused has been satisfactory to his commanding officer between the date of trial and the date of this action . . .'?"

Strictly speaking, the problem is divisible into two parts. On one side is the matter of the suspension of the discharge, and on the other is its remission. Suspension and remission are distinct legal acts which may involve different considerations. United States v Phillips, 1 USCMA 349, 3 CMR 83. See also, United States v McDaniel, 7 USCMA 56, 21 CMR 182. Here, the convening authority suspended the execution of the discharge for the period of confinement or the completion of appellate review, whichever is later. The general court-martial authority did more than merely approve the suspended sentence. He also provided for the following things: (1) suspension for six months; (2) a condition that the suspension would not take effect unless the prior conduct of the accused was satisfactory to his commanding officer; and (3) automatic remission of the unexecuted portion of the sentence at the end of the period of suspension. Since the new six-month suspension period was not related to the completion of appellate review, it could conceivably exceed the original period of suspension approved by the convening authority. Furthermore, the convening authority did not provide any conditions for the suspension.

Without deciding whether a condition precedent can properly be imposed, it is clear that the supervisory authority's provision for satisfactory prior conduct added to the terms of the original suspension. As a result, the terms of his suspension appear to be more severe than those approved by the convening authority. If they are more severe, they are illegal. United States v McDaniel, supra. But, the illegality of the suspension would not affect the separate provision for automatic remission. United States v Marshall, 2 USCMA 342, 8 CMR 142. We need not, however, pause to determine whether the provisions of the two suspensions can be

harmonized. See United States v Varnado, 7 USCMA 109, 112–113, 21 CMR 235. More important to military law and to the issue raised by the certified question is whether the supervisory authority can delegate his power to suspend execution of the sentence.

The scope of the powers of a particular court-martial authority is defined by the Uniform Code. United States v Simmons, 2 USCMA 105, 6 CMR 105. Under the Code, a supervisory authority in reviewing a case of this kind has the same powers as the convening authority. Article 65(b), 10 USC § 865; United States v Frisbee, 2 USCMA 293, 8 CMR 93. The latter can suspend a punitive discharge, and he can remit it. Articles 64 and 71(d), 10 USC §§ 864, 871; United States v Massey, 5 USCMA 514, 18 CMR 138; United States v Watkins, 2 USCMA 287, 8 CMR 87. Can he also delegate these powers? If he can, then the supervisory authority is similarly empowered.

In United States v Sonnenschein, 1 USCMA 64, 72, 1 CMR 64, we pointed out that the powers of suspension and remission are "nonministerial." In other words, they are discretionary. A discretionary power can be either delegable or nondelegable. Whether it is the one or the other depends upon the terms of the grant of the power. See Jay v Boyd, 351 US 345, 100 L ed 1242, 76 S Ct 919, Note 8, and dissenting opinion, Mr. Justice Frankfurter, page 372. The grant of the powers in issue is contained in the Uniform Code. Turning to its provisions, we find that whenever Congress conferred a power upon a particular authority in the court-martial system and intended that authority to give others the right to exercise the power, it expressly provided for such designation. Articles 9(a), 22(a)(6)(7), 23(a)(7), 24(a)(4), 71 (b), 74(a), 135, and 140. See also United States v Roberts, 7 USCMA 322, 326, 22 CMR 112; United States v Schuller, 5 USCMA 101, 104, 17 CMR 101. Speaking of a similar situation in United States v Simmons, 2 USCMA 105, 107, 6 CMR 105, we said: "This singling out of specific officials for the

474

exercise of the power is itself a weighty argument that Congress intended to limit the power to those designated."

Added to the careful enumeration by Congress is the fact that established administrative practice contemplates the personal exercise of the powers by the convening authority when he reviews the record of trial. Manual for Courts-Martial, U. S. Army, 1921, paragraph 392; Manual for Courts-Martial, U. S. Army, 1928, paragraph 87*b*, pages 76–77; Manual for Courts-Martial, U. S. Army, 1949, paragraph 87*b*, pages 95–96; Manual for Courts-Martial, United States, 1951, paragraphs 88*e*, 94*a*(2), and 97*a*, Appendix 14*b*, page 547. In view of the long-standing nature of this practice, we can assume that it was known to and also acquiesced in by Congress when it enacted the Uniform Code. United States v South Buffalo Ry. Co., 333 US 771, 774–5, 92 L ed 1077, 68 S Ct 868. These considerations lead to the conclusion that Congress did not intend the convening or reviewing authority to delegate his powers of suspension and remission to other persons. Here, the stated condition actually grants to the accused's commanding officer the power to determine the effectiveness of the suspension. Legally and practically, it delegates the power to suspend. Accordingly, we hold that delegation of his power to suspend by the supervisory authority to the accused's commanding officer was illegal and void.

The certified question is answered in the negative, and the decision of the board of review is affirmed.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

This case appears to me to be an example of how a board of review and this Court can erect a complex and confused legal structure out of a very simple issue. I may not see clearly all of the ramifications that could be lurking in the background of this case, but what I do observe leads me to believe that the answer to the certified question is made most difficult by my associates.

If they would turn to the Manual for Courts-Martial, United States, 1951, they would find that its framers anticipated that some reviewing authorities might conceivably issue ambiguous action orders and so they provided a simple procedure to meet that contingency. I, therefore, suggest that the easy and best way to dispose of this issue is to follow the Manual directive.

Before discussing the problem before us, it is advisable to state the facts chronologically and to draw a few preliminary conclusions. The accused was legally tried and sentenced, and so we are not concerned with any question of a fair trial. The convening authority affirmed the findings, but he modified certain parts of the sentence so as to benefit the accused. However, he only suspended the execution of the bad-conduct discharge until the accused's release from confinement or the completion of appellate review, whichever was the later date. By statute it could not have been executed until the latter event had occurred. The record was then referred to the officer exercising general court-martial jurisdiction, who affirmed the findings and sentence as approved by the convening authority. Implicit within his action is a finding that the findings were proper and the sentence was appropriate. Had the second reviewing officer stopped at that point, the record would have been free from doubt, but he went on to suspend further the execution of the discharge, conditioned upon a finding that accused's behavior was satisfactory to his then commanding officer. The Government is now penalized for that post-trial act of generosity on his part.

II

If I were to accept the rationale of the board of review and my associates, that the act of the officer exercising general court-martial jurisdiction was void, I could not possibly reach their result. Concededly, all of the steps up to the point of suspension were legal, and the error, if any, arises solely out of the reviewing officer's attempt to extend clemency to the accused. Whatever he did in that connection was done as a matter of grace, and not as a mat-

ter of right. In that situation, his procedural error, if any, is not so important, for he has not hurt the accused, and was not bound to help him. Even if the error was important, it should be obvious that a void act is a nullity and, in law, there has been no action taken. The only way to remedy that deficiency is to require that he take appropriate action for he must perform his legal duty before any approval of the sentence can be effective. Until he has acted legally, the findings and sentence are not approved and no action of the board of review can be considered as an acceptable substitute. Assuming that the sentence is divisible and that part may be suspended, the portion dealing with the suspension cannot be dissected so that the suspension may be affirmed on appeal but the conditions rejected. Therefore, before the record below is complete, it must affirmatively appear that a punitive discharge has been approved and, if a stay of execution is intended, that a legal order suspending its execution has been entered. If the only order found in the record is void, there just is no reviewing officer's action on a necessary part of the sentence.

### III

My way of solving this problem narrows to this simple proposal. Here the sentence had been approved by both reviewing officers, but whether or not it was to be executed remained in doubt because the higher commander's action was uncertain, ambiguous, and incomplete. All that was needed was to have the doubt removed by that functionary. The board of review, in a divided opinion, went to some length to find that his words, properly interpreted, delegated a nondelegable power. For my part, I see no point in struggling to reach that result, for he had to act again regardless of whether his order was void or merely ambiguous. I have already dealt with the former possibility, and if the order of suspension was shrouded in doubt to such an extent that the board of review was uncertain as to its legal purport and meaning, then the Manual specifically provides for the proper method of remedying

that deficiency. Paragraph 95 of the Manual for Courts-Martial, United States, 1951, provides:

"When a record of trial by general court-martial, or a record of trial by special court-martial in which a sentence to bad conduct discharge has been approved, has been forwarded by a convening authority to higher authority and error of the kind mentioned in 86c and d is noted by the higher authority, the record will be returned to the convening authority (Art. 60) with directions for the correction of the record or revision of the proceedings.

"When, as an incident of the review of a record of trial pursuant to Articles 65b, 66, 67, or 69, it is noted that the action of the convening authority or of a higher authority is incomplete, ambiguous, or contains clerical errors, the authority who took the incomplete, ambiguous, or erroneous action may be instructed to withdraw the original action and to substitute a corrected action therefor. See appendix 14 for a form of corrected action by the convening authority."

### IV

While the Court's opinion says much about delegation of power, it does not properly answer that question. Certainly a convening authority cannot delegate to anyone his legally imposed duty to pass on the appropriateness of a sentence or his discretion to suspend its execution. However, a sentence can be suspended by him upon certain terms, and even though appellate agencies may not like the conditions imposed, they lack the power to change them. If the terms of probation are illegal, the whole suspension will fail, or the accused need not accept them, or upon remand they may be the subject of reconsideration by the officer who imposed them. But I know of no authority which permits a board of review to affirm an order staying the execution of a sentence on conditions different from those imposed by the reviewing officer.

When the action of this officer exercising general court-martial jurisdic-

476

tion is considered in its proper perspective, there is little real doubt about his purpose and intent. He was reviewing the findings and sentence of an accused who had five previous convictions, and he did not intend to suspend the execution of the punitive discharge if accused's conduct between the date of trial and the date of his action did not justify such clemency. He could have delayed his action until he received a report from the commanding officer of the accused and, assuming it had been favorable, he could then have issued the order staying execution. The imposition of sentence in a civil court is quite often delayed until such time as a probation officer submits a report to the court. This was perhaps the preferable method. However, it is not unusual for a civilian judge to suspend a sentence, conditioned upon the defendant's showing that he has complied with certain covenants or obligations placed upon him. Thus, in a larceny case, a suspension may be conditioned upon a defendant's making proof that he has made restitution of the loss.

By way of comparison, when I consider the latitude military law has granted to convening authorities, I find they have ample authority to go at least as far as their civilian counterparts and make suspensions dependent upon favorable information to be acquired subsequent to the order. My difficulty here arises simply because, while I believe this to be that latter type of suspension, the mechanics for perfecting the record have not been spelled out. For instance, I am unable to ascertain whether it was intended that the accused or the Government should carry the burden of supplying the information necessary to finalize the order, nor do I know who was to be informed. So far as the record shows, the information has not been obtained by either party, so the order is lacking in that degree of specificity necessary for legal efficacy.

For the foregoing reason, I would require a return of the record to the officer exercising general court-martial jurisdiction for appropriate action.