UNITED STATES, Appellee

v

JAKE LEDLOW, JR., Acting Sergeant, U. S. Marine Corps, Appellant

11 USCMA 659, 29 CMR 475

No. 13,985

Decided July 15, 1960

*Captain Frederick D. Clements,* USMC, was on the brief for Appellant, Accused.

*Commander Louis L. Milano,* USN, was on the brief for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Upon a rehearing conducted before a special court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, reduction to the grade of private, confinement at hard labor for a period not to exceed four months, and forfeiture of $20.00 per month for a period not to exceed four months. Intermediate appellate authorities affirmed, and The Judge Advocate General of the Navy certified the following questions to this Court:

(a) Was the accused prejudiced by testimony concerning results of a lie detector examination?

(b) Did the president of the court err to the accused's prejudice by failing to instruct *sua sponte* concerning the voluntariness of the confession?

(c) Was the accused prejudiced by the president's instructions on the sentence and the trial counsel's reference to the previous sentence awarded the accused?

(d) Was that portion of the sentence relating to confinement and forfeitures legal?

On September 18, 1959, accused was serving as a platoon drill instructor at Parris Island Marine Corps Recruit Depot. His platoon was quartered with other recruit organizations in a single barracks, divided into separate bays. On the same date, the platoon located in the bay adjacent to that of the accused left the barracks at approximately 5:00 a.m. for physical training. The accused and his platoon remained in the building. Upon the return of the other platoon, several of its members discovered that varying sums of money had been removed from their foot lockers.

An investigation was immediately commenced. Ledlow and other noncommissioned officers voiced suspicion of one Private Williams, a member of Ledlow's platoon. A search of Williams' pockets disclosed the presence of a sum approximately equal to that stolen. A check of the serial numbers of the currency thus found with records individually maintained by the victims established its identity beyond question. Despite his protestations of innocence, Williams was ordered confined. He immediately cast suspicion upon Ledlow by declaring the latter had turned the stolen monies over to him.

Ledlow was subsequently interrogated by investigators and given a lie detector test. Prior to being questioned, he was fully advised of his rights under Code, supra, Article 31, 10 USC § 831. He apparently maintained his innocence and was released in the custody of Sergeant Deluca, his immediate noncommissioned superior, in order that he might be confined. At approximately the same time, he was made aware of his wife's hospitalization and the birth of his daughter.

Sergeant Deluca drove accused to his battalion headquarters. When the vehicle stopped there, accused inquired concerning the reason and Deluca informed him that he had been ordered by the company commander to pick up

**661**

the necessary papers for accused's confinement. Accused began to cry and stated "he didn't want to go to the brig, he said he did it and would tell everybody everything about it as long as he didn't have to go to the brig." Deluca advised the accused that he "didn't want to know it" and returned him to the Provost Marshal's Office where a written statement, not offered in evidence, was apparently executed.

Accused elected to testify in his own behalf. Following a denial of the theft, he admitted he had confessed his guilt to Deluca. Nevertheless, he stated that his statement was false, and motivated solely by a desire to avoid confinement in order to be with his wife and baby. Accused declared he had asked Deluca where they were going when they left the Provost Marshal's Office. Deluca replied that he had no alternative but to place him in confinement. Accused then said:

". . . I didn't want to go to the brig that night; *just like he said, I hated to be in the brig, my wife having a baby and me being locked up for something I didn't do. I asked Sergeant Deluca if I made some kind of statement would he see that I didn't get locked up.* He said that if I made a statement he would talk to Captain Tolnay and he was pretty sure that he wouldn't lock me up. He took me back to the PMO office and Captain Tolnay later came up there that night." [Emphasis supplied.]

I

Appellate defense counsel urges that the evidence recited above raises a question concerning the voluntariness of accused's confession to Sergeant Deluca on the basis that the statement was induced by a threat to place accused in confinement. We can find no basis in the record for that contention. Rather, it is clear that accused's confinement had earlier been ordered by Captain Tolnay, and Sergeant Deluca was merely informing him, upon request, of that fact. Thereafter, it was the accused who, for personal reasons, offered to confess provided Deluca would seek to

662

have Captain Tolnay's orders rescinded. This is established by accused's own testimony. Accordingly, there is no evidence in the record that the Government sought at all illegally to induce accused to admit his guilt. The most that can be said is that accused was attempting to establish the falsity of his pretrial statements rather than to attack their admissibility. Thus, his testimony goes solely to the weight of his confession and not to its admissibility. We must, therefore, conclude that no issue was raised concerning the statement's voluntary nature and that instructions on that question were not required. United States v McQuaid, 9 USCMA 563, 26 CMR 343; United States v Spivey, 8 USCMA 712, 25 CMR 216.

II

Another of the certified issues relates to whether accused was prejudiced by testimony concerning the results of a lie detector examination. With respect to this inquiry, we note that Sergeant Deluca testified that Sergeant Ledlow was administered a polygraph examination and "all during the test and the interrogation it did appear that Sergeant Ledlow did know something about the missing monies." On cross-examination by defense counsel, he declared he "had faith in the man up until the last test."

While the accused was testifying in his own behalf, he maintained he had been informed by the polygraph examiner that "he could establish the fact that I didn't take the money but I might have known something about it." On cross-examination, the trial counsel sought to elicit the actual result of the lie detector test. Defense counsel immediately objected, and the president refused to permit such evidence to be received.

From the foregoing, it is clear that some evidence relating to the outcome of accused's polygraph examination crept into the record. It was solicited by the trial counsel, however, on only one occasion, and it was then peremptorily excluded by the president. Otherwise,

it seems to have come in as the result of the witness' narrative replies to general questions put by both counsel. Be that as it may, such evidence is inadmissible. United States v Massey, 5 USCMA 514, 18 CMR 138; United States v Adkins, 5 USCMA 492, 18 CMR 116. It was, therefore, erroneous to receive it. The question of prejudice, however, is quite another matter.

The impropriety in receiving the results of polygraph examinations lies in the probability that the fact finders will attribute significance to them in their ultimate determination of accused's guilt or innocence. The receipt of every bit of such evidence does not necessarily lead us to believe that this probability in fact exists. The standard by which we must measure the existence of harm to the accused from admission of the matter is whether the other proof in the case is such that there was no danger that the court members weighed the improper item in their deliberations. United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Moreno, 10 USCMA 406, 27 CMR 480. It is certain that the other evidence in this record reaches that high standard. Not only was there an entirely voluntary confession of guilt by the accused, but it was also established that he had turned the stolen money over to a member of his platoon. In addition, the prosecution demonstrated both motive and opportunity for the crime, as well as the existence of two other separate and voluntary admissions of guilt to his company and battalion commanders. Under such circumstances, we deem the proof of guilt so overwhelming that any chance that the witness' remarks affected the ultimate conclusion of the court is simply nonexistent. Accordingly, we conclude that the erroneous receipt of the evidence was nonprejudicial. In so doing, we specifically note that the inadmissible evidence was not deliberately injected into the record by the trial counsel. Were that situation present, we might well be compelled to reach a different result. See United States v Johnson, supra, and United States v Bolden, 11 USCMA 182, 28 CMR 406.

### III

The next issue before us involves whether the president's instructions on the maximum sentence imposable and the trial counsel's remarks with respect thereto constitute prejudicial error. The president's instructions informed the court-martial that the maximum sentence "allowable in this case is: Dishonorable Discharge, forfeiture of all pay and allowances, confinement at hard labor not to exceed five years and reduction to the lowest enlisted inferior rank." He then reminded the members that the jurisdiction of a special court-martial was limited to imposition of a bad-conduct discharge, forfeiture of two-thirds pay per month for six months, and confinement at hard labor for six months. At this point, the trial counsel informed the court that accused's case was a rehearing and, at the original trial, a sentence to bad-conduct discharge, forfeiture of $20.00 per month for four months, confinement at hard labor for four months, and reduction to the grade of private had been imposed.

The Government concedes that the president's instructions and trial counsel's remarks necessitate corrective action with respect to the sentence. That concession is proper. United States v Eschmann, 11 USCMA 64, 28 CMR 288; United States v Green, 11 USCMA 478, 29 CMR 294. Accordingly, reassessment of the penalty is required.

### IV

The final question presented to us is whether the court-martial's announced sentence is so vague and indefinite that disapproval of the confinement and forfeitures adjudged is required. The accused was sentenced as follows:

". . . To be discharged from the service with a bad conduct discharge, to be reduced to the grade of private, to be confined at hard labor for a period *not to exceed four months*, and to forfeit $20.00 of your pay per

**663**

month *not to exceed four months."* [Emphasis supplied.]

With respect to the answer to this inquiry, my brothers and I are in disagreement. As they are of ▆▆▆▆▆▆ ▆ the view that the sentence, construed as a whole, must be held to impose confinement at hard labor for four months and forfeiture of $20.00 per month for a like period, it necessarily follows that the certified question must be answered in the affirmative. As I differ with this conclusion, the matters hereinafter set forth represent only my own concept of the problem presented.

A court-martial sentence must be definite and certain. Manual for Courts-Martial, United States, 1951, paragraph 126$h$(2); Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 403; 15 Am Jur, Criminal Law, § 443. The difficulty with my brothers' conclusion that this sentence attains that standard is their disregard of the twice reiterated phrase "not to exceed." When that language is considered along with the balance of the announcement, it is immediately apparent that accused was sentenced to a term of confinement and forfeitures of not more than four months, or to state it another way, for some indeterminate period which might not run beyond four months. In short, unless we simply speculate, the period of confinement and forfeitures cannot be determined from the four corners of the sentence.

The question before us is not novel in military law. In United States v Camplin, 7 CMR 193, an Army board of review held a sentence to " 'confinement at hard labor for a period *not to exceed* one year' " void for indefiniteness. An Air Force board of review reached the same result in United States v Harris, 6 CMR 788. See also United States v Welch, 12 CMR 820. The civil rule is not different. In Lee Lim v Davis, 75 Utah 245, 284 Pac 323 (1929), the defendant was sentenced to an indefinite period of confinement extending from ten years to life. As the pertinent Utah statute did not permit indeterminate sentences in murder cases, the highest court of that State

set aside the sentence even though, as argued there, the sentencing judge clearly evinced an intention to have the accused confined for a minimum of ten years. In Ex parte Howard, 72 Kan 273, 83 Pac 1032 (1905), the sentence was to confinement "until discharged therefrom by due course of law." As no definite period of restraint was set, the sentence was held a nullity. In State v Nova, 206 Iowa 635, 220 NW 41 (1928), the punishment imposed was confinement "not to exceed" six months. Iowa's highest tribunal held the sentence objectionable as the period of confinement could not be ascertained therefrom. It nevertheless cured the error by fixing the term "definitely at 6 months." In so acting, it apparently exercised authority which this Court and the boards of review have never possessed.

The logic of the foregoing is quite apparent, for it is clear that use of the phrase "not to exceed" sets a maximum limitation on the punishment without prescribing the definite and unambiguous period required under the Code and the Manual, supra. Its application to other matters will even more strongly demonstrate the sentence's vagueness. Thus, how much must one pay if he is fined a sum "not to exceed $100.00"? To what salary is one entitled under a contract of employment setting forth an agreed compensation which is "not to exceed" a stated sum per annum, or just what is the price desired for an article advertised for sale at an amount "not to exceed $1,000.00"? It is obvious that each of these questions demands the conclusion that the quoted phrases are ambiguous and announce only an indeterminate amount. The same reasoning applies to the sentence before us, and I cannot join in my brothers' finding that it sets forth a definite period of confinement and forfeitures. Their action, however, requires an affirmative reply to the certified question.

Questions (a) and (b) are answered in the negative. Questions (c) and (d) are answered in the affirmative. The decision of the board of review is reversed, and the record of trial is re-

664

turned to The Judge Advocate General of the Navy. The board of review may reassess the sentence or direct a rehearing thereon.

QUINN, Chief Judge (concurring):

I concur generally with the principal opinion. My views on the fourth certified question are as follows.

No one doubts the necessity for imposition of a clear and definite sentence, but elimination of every conceivable doubt is not an indispensable prerequisite to validity. When the form of a sentence strays from the ordinary, the entire judgment imposing sentence must be considered to ascertain its true meaning. Hode v Sanford, 101 F2d 290 (CA 5th Cir) (1939). If the intention may be gathered from the judgment as a whole, an appellate court is not at liberty to deny it legal effectiveness. Valdez v United States, 249 F2d 539 (CA 5th Cir) (1957); see also United States v Hollis, 11 USCMA 235, 29 CMR 51; United States v Bell, 8 USCMA 193, 24 CMR 3.

Examined in the light of these principles there is, in my opinion, no uncertainty or vagueness in the instant sentence. Confinement "not to exceed four months" means that the accused is to be confined for a period of four months, unless intermediate reviewing authorities, in the exercise of their discretionary authority, reduce it. The same is true of the forfeiture provision. Boards of review decisions cited in the principal opinion are not at all persuasive, and are in conflict with the rationale of this Court's holding in United States v Smith, 3 USCMA 336, 12 CMR 92. There, we sustained a sentence which provided inter alia for confinement at hard labor for one year and forfeiture of pay and allowances "during confinement and until release therefrom." Rejecting a defense contention that the forfeiture provision was invalid because indefinite and uncertain, we said:

". . . the uncertainty is only as to the length of time the forfeitures of pay and allowances will be effective. As will be later developed, it could not exceed the period of four

months and it might be less depending upon good time. That portion of a sentence which is remitted for good behavior is well known to the military authorities and so the period of forfeitures can be clearly ascertained. This makes the sentence definite enough to withstand a broadside attack against its legality."

In Smith, as here, the maximum limit was fixed and definite; what was subject to adjustment was the minimum period. "That," we said, "is not the uncertainty which will void a [court-martial] sentence." The civilian authorities cited do not sustain the principle for which they are advanced.

In Ex parte Howard, 72 Kan 273, 83 Pac 1032, the defendant was sentenced "to confinement and [sic] hard labor in the State Penitentiary . . . until discharged therefrom by due course of law." This sentence was held a nullity for no term was mentioned. In Lee Lim v Davis, 75 Utah 245, 284 Pac 323, the defendant was convicted of murder in the second degree and was sentenced to confinement "for an indeterminate term between ten years and life." The Supreme Court of Utah held that the sentence was void because the statute providing for indeterminate sentences specifically prohibited its imposition in murder cases. Finally, in State v Nova, 206 Iowa 635, 220 NW 41, the defendant was sentenced to confinement "not to exceed 6 months." The Supreme Court of Iowa said:

". . . The complaint is made that the form of the sentence of imprisonment is such that it cannot be said whether the defendant be imprisoned for 3, or for 4, or for 5, or for 6 months.

"The form of the entry in this respect is objectionable. It is evident on its face that it was the result of mere inadvertence. To avoid any doubtful question of interpretation thereof, the judgment will be interpreted here so as to fix the term of imprisonment definitely at 6 months from the date fixed in the original entry of the district judge."

For these reasons, I answer the fourth certified question in the affirmative.

LATIMER, Judge (concurring):

I concur for the reasons set forth by the Chief Judge.