UNITED STATES, Appellee

v

AMOS L. COTTON, JR., Airman Second Class,
U. S. Air Force, Appellant

13 USCMA 176, 32 CMR 176

No. 15,692

June 29, 1962

*Colonel Daniel E. Henderson, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

## Opinion of the Court

QUINN, Chief Judge:

Four rooms in Barracks 328, Bunker Hill Air Force Base, Peru, Indiana, were entered during the night by an intruder. In each instance money was stolen from an occupant. One of the victims, Airman B. L. Campbell, was awakened while the thief was still in his room; he identified him as the accused. Campbell's report to the Air Police led to an investigation in the course of which the accused made two statements on different days. Later, he was charged with four larcenies, but was convicted of only three by a general court-martial, and sentenced to a bad-conduct discharge, confinement at hard labor for one year and accessory penalties. On this appeal, the accused contends his conviction should be set aside because of errors of the law officer.

In the first assignment of error, the accused maintains the law officer improperly prevented him from giving testimony in connection with the admissibility of his two pretrial statements, which the Government offered in evidence. Defense counsel objected to the admission of the statements, and requested an out-of-court hearing on "the question of whether . . . [the] statement[s] . . . [were] given voluntarily." The law officer granted the request and held an extensive hearing on the objection. The agent who took the statements from the accused was examined at length by defense counsel. His testimony establishes that on the two occasions upon which the accused made a statement, he was first fully informed of his rights under Article 31 of the Uniform Code of Military Justice, 10 USC § 831, and of the offenses of which he was suspected. Each statement was typed directly on a typewriter by the agent during the course of his examination of the accused. The content was developed by questions by the agent and answers by the accused, but was set down in narrative form. Notwithstanding the change in form, each statement "reflect[ed] what" the accused told the agent. On both occasions, the accused read the statement while it was still in the typewriter. Then when it was removed from the machine, he initialed typographical errors, reread the statement, and signed an "affidavit" certifying he had read the statement and "fully" understood its contents. Defense counsel also called the accused as a witness to contest "the voluntariness of the statements purporting to be confessions made by him." The law officer explained to the accused his right to testify for that limited purpose.

Soon after the accused began to testify, it appeared that defense counsel intended to inquire in detail into the accused's ability to recall his actions on the night of the alleged thefts. The law officer interrupted the examination, with the comment that he thought the "line of questioning" irrelevant to the special purpose of the hearing. To support the examination, defense counsel cited United States v Whitlow, 26 CMR 666. He quoted excerpts from the board of review's opinion which indicated that in that case the "law officer should have excluded . . . [the accused's pretrial statement] as not worthy of belief" because the evidence established the accused had "no memory" of the events, and that the alleged confession had actually been composed by the agent. Although unconvinced that defense counsel's line of inquiry was relevant to the limited purpose of the hearing, the law officer allowed him to continue. Moments later, trial counsel interrupted to say he thought defense counsel was now inquiring into the "truthfulness" of the statements, and thereby was "open-[ing] the door for prosecution to cross examine" on the merits. A long discussion was held on this point; it was con-

cluded with a statement by defense counsel to the effect that he would "be very grateful" if the law officer would "caution" him at appropriate times in the examination, so that he would not be waiving the accused's "right not to testify at this time as to the merits."

Continuing with the examination, defense counsel elicited testimony to the effect that the accused could not recall any of his actions after he returned to the base from a neighboring town and entered his own room in the barracks. Referring to specific sentences in the pretrial statements, counsel asked the accused if he "could recall from . . . [his] memory" doing the things recited in them. The accused said he could not. After several such questions and answers the law officer again interrupted the examination. The following excerpts from the record of trial explain the reason for the interruption and provide the basis for the accused's claim that his testimony on the voluntariness of his statements was improperly curtailed:

"LO You're in effect arguing, if I understand your point correctly, that this accused has no recollection of the events leading up to these charges and specifications.

"DC Yes, sir.

"LO That's in effect what you're saying.

"DC Yes, sir. And if he has no recollection of them, then he couldn't have made a statement about him [sic] that would be considered a voluntary confession.

"LO All that needs to be shown insofar as this part of the trial is concerned in this out of Court hearing is a question of whether those are his statements or those are not his statements. It's not the question of whether he remembers them or not. If they are not his statements, then they are somebody else's statements.

. . . . . .

"LO I agree with the Trial Counsel. I think you're going to have to limit yourself to the proposition of whether or not those are his statements contained in Prosecution Exhibit 3, not whether he can remember them or not. You're getting too close, as to the question of the truth or falsity of what's contained in that exhibit or what is marked as Prosecution Exhibit 3.

"DC How else am I to show what the case of United States against Whitlow shows? How else am I going to be able to show that he couldn't remember the things in this statement unless I ask him?

"LO Well, without going into how to show that, I'm going to say this: That at this point you're obligated to produce evidence to show that this was an involuntary pretrial statement, if it was involuntary on the theory you are pursuing—if it was involuntary because the questions were phrased by the interrogator, questions of his own origin apparently obtained from interrogation of other witnesses associated with the offenses, they are not the statements of the accused.

"DC Well, sir, that's what I'm trying to establish, that Airman Cotton couldn't remember these things, so the facts that were in the statement must have been supplied by the interrogator and then by browbeating Airman Cotton along, Airman Cotton just gives up and says, all right, I'll sign it.

"LO No objection to any line of testimony showing any line of procedure, brow-beating, if you want to call it that, or for him to testify that those are not his statements; that they were supplied by somebody else and there's nothing wrong with that line of questioning.

"DC Yes, sir, but behind all of that is the testimony in evidence that they could not be Airman Cotton's statements because he couldn't remember.

"LO That may be evidence for other purposes. I don't believe it's appropriate to bring it up at this point. I believe the problem here is a question of whether this is a volun-

tary statement or an involuntary statement, referring to Prosecution Exhibit 3 for Identification.

"DC Then I take it I'm prohibited from pursuing my line of questioning him about the — —

"LO Yes, that's the way it is.

. . . . . .

"DC Well, then, let's go on with the manner in which the statement was taken."[1]

A writing admitting guilt which is not actually made or acknowledged by the accused is inadmissible ▮ hearsay, and cannot be considered as evidence against him. See Manual for Courts-Martial, United States, 1951, paragraph 139; see also United States v Sanchez, 11 USCMA 216, 29 CMR 32. This idea seems to be the import of the *Whitlow* case, cited by defense counsel at trial. We need not, however, analyze that case; nor need we decide whether an issue of "voluntariness" is raised by a claim that a pretrial statement purporting to be the accused's was actually made by another without his authority. A contention that a ▮ statement is inadmissible because not made or acknowledged by the accused is entirely different from a contention that the statement was made by the accused but is in fact not true. The latter contention raises a question of credibility or weight, not admissibility. We discussed this difference between admissibility and credibility in regard to a pretrial statement in United States v Ledlow, 11 USCMA 659, 29 CMR 475. In that case the evidence showed a pretrial confession was made by the accused, willingly and without improper influence. At trial, however, the accused attacked the confession on the ground it was false in fact, and had been made only to enable him to be with his wife and child. Writing on the effect of this testimony, Judge Ferguson said:

". . . Accordingly, there is no evidence in the record that the Gov-

ernment sought at all illegally to induce accused to admit his guilt. The most that can be said is that accused was attempting to establish the falsity of his pretrial statements rather than to attack their admissibility. Thus, his testimony goes solely to the weight of his confession and not to its admissibility. We must, therefore, conclude that no issue was raised concerning the statement's voluntary nature and that instructions on that question were not required."

The law officer's comments during the out-of-court hearing show clearly his awareness of the basic ▮ difference between admissibility and credibility. They also show the defense was accorded full opportunity to develop any evidence bearing on the question of admissibility, the purpose for which the out-of-court hearing was held. Defense counsel was specifically informed he was under no restriction whatever "to any line of testimony showing . . . brow-beating . . . or . . . that those are not . . . [the accused's] statements." The accused admitted he "looked at" the statements, initialed the errors, and signed the affidavit attesting he had read and understood the statements. Unless, and until, the defense disputed the authorship of the statements, the accused's ability to recall his activities on the night of the thefts raised no issue for the law officer's consideration on the question of admissibility, or of "voluntariness," as it was called at the hearing. See United States v McQuaid, 9 USCMA 563, 26 CMR 343. We conclude, therefore, the officer did not err in limiting the accused's testimony on the preliminary issue presented at the out-of-court hearing. This is not to say, of course, that the testimony of the accused was immaterial for all purposes. As the quotation from the *Ledlow* case points out, it is material on the weight to accord the statements. See also United States v Sanchez, supra. The record of trial shows that when the matter later was raised in open court in connection with

---

[1] In the remainder of his examination, the accused related the circum-

stances under which he signed the two statements.

the merits, the law officer allowed defense counsel full latitude in examining the accused on his purported inability to recall his conduct after he allegedly returned to the base and went directly to his own room to go to bed.

Turning to the instructions on the right of the court-martial to consider the pretrial statements, the accused contends they constitute a grossly misleading comment on the evidence of voluntariness. In part, the law officer instructed the court-martial that his ruling receiving the statements into evidence did not "conclusively establish the voluntary nature of the statements." Appellate defense counsel argue that in light of the extensive out-of-court hearing, which was known to the court members, the advice might reasonably have led them to conclude that since the matter had been argued before, and decided by, the law officer, they should not try to substitute their nonprofessional evaluation of the evidence for his. Conversely, Government counsel maintain the instruction served only to "alert" the court members to the fact that they should give no consideration whatever to the law officer's preliminary determination of the issue.

Apparently the challenged instruction is part of a standard instruction used by law officers. Department of the Army Pamphlet No. 27–9, Military Justice Handbook: The Law Officer, April 1958, page 171. It has been singled out by accused as an improper instruction in a number of cases. See United States v Odenweller, 13 USCMA 71, 32 CMR 71; United States v Acfalle, 12 USCMA 465, 31 CMR 51. In the *Acfalle* case there was an oblique indication that the instruction might suffer from a "basic insufficiency."[2] However, an inexact instruction does not require reversal of an otherwise valid conviction if there is no fair risk that it misled the court members. United States v Houghton, 13 USCMA 3, 32 CMR 3; United States v Smith, 11 USCMA 321, 29 CMR 137. It was precisely on that ground that we sustained the accused's conviction in United States v Higgins, 6 USCMA 308, 20 CMR 24, against an attack on an instruction substantially similar to the one challenged here. In the *Higgins* case the instruction was considered in context with all the instructions, and when "fairly read" as a whole, it clearly appeared that each court member was adequately instructed that he had to determine for himself the issue of voluntariness, without regard to the ruling of the law officer. That point is emphasized in this case even more than in Higgins, since here the law officer reminded the court members that his ruling *"merely* place[d] the statements before" them.[3]

---

[2] The instruction seems to be based upon paragraph 140a of the Manual for Courts-Martial, United States, 1951, which provides that a ruling admitting an accused's pretrial statement into evidence "is not conclusive of the voluntary nature of the admission or confession." See United States v Davis, 2 USCMA 505, 10 CMR 3. It is arguable that the language of the Manual merely implies the idea that the ruling on admissibility does not *decide* the question of voluntariness; whereas, the language of the instruction implies that *the evidence actually establishes* voluntariness but that the ruling on admissibility does not mean the evidence is conclusive.

[3] In United States v Higgins, supra, the instruction was as follows:
"The court is reminded of the previous ruling of the law officer which permitted certain admissions and confessions of the accused to be placed in evidence. This ruling was final only on the question of the admissibility of the confessions, and admissions, and did not conclusively establish the voluntary nature of the confession or the sufficiency of the warning. You in your own deliberations upon the guilt or innocence of the accused may come to your own conclusions as to the voluntary nature of the confessions and the sufficiency of the warning."
In this case the instruction from which the challenged part is taken is as follows:
"You are advised that my ruling, receiving in evidence Prosecution Exhibits 2 and 3, the out of Court statements of the accused with respect to the offenses of larceny as alleged in

Perhaps law officers should rephrase the standard instruction to make plain to the court members that ■ the ruling on admissibility does not decide the issue of voluntariness; and that voluntariness is a factual matter for their consideration, which, along with other such issues, must be decided by them beyond a reasonable doubt. See United States v Odenweller, 13 USCMA 71, 32 CMR 71. However, our concern here is not with what should be done, but with what was done. As to that, we find no fair risk that the court-martial was misled by the instruction to the accused's prejudice.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

While I agree with the majority opinion that the law officer placed no unreasonable limitation on defense counsel's examination of his client in connection with the subject of voluntariness, I am unable to join them in their conclusion that the law officer's instructions on the same matter were not prejudicially erroneous. In my view, he threw the weight of his ruling on admissibility into the balance against the accused, and the fact that he subsequently gave a proper advice to the military jury did not expunge the harm which had been done.

We have all concluded that an issue was raised by the evidence in this record concerning the voluntariness of accused's confession, for it reflects his testimonial claims that he did not understand his right to remain silent under the provisions of Uniform Code of Military Justice, Article 31, 10 USC § 831; that he was continuously interrogated for six hours; that he was denied access to counsel; and that he was informed it would be better for him to confess. While there is also proof which countervails each of these contentions, a factual issue was clearly presented for resolution by the court members.

In submitting the controversy to the fact finders, the law officer gave the following instructions:

"You are advised that my ruling, receiving in evidence Prosecution Exhibits 2 and 3, the out of Court statements of the accused with respect to the offenses of larceny as alleged in Specifications 1, 2, 3 and 4, is final only on the question of admissibility. My ruling merely places the statements before the Court; *it did not conclusively establish the voluntary nature of the statements.* Each of you, in your deliberations upon the findings of guilt or innocence, must come to your own conclusion as to the voluntary nature of the statements. If you determine these statements were involuntary, you must refuse to consider them as evidence. You may accept the statements as evidence only if you determine that they were voluntary. You are also advised that if you find the statements were voluntary, any evidence introduced as to the voluntary or involuntary nature of the statements may be considered by you in determining the weight that you will give to the statements." [Emphasis supplied.]

The necessary inference from the emphasized statement of the law officer regarding the effect of his admission

Specifications 1, 2, 3 and 4, is final only on the question of admissibility. My ruling merely places the statements before the Court; it did not conclusively establish the voluntary nature of the statements. Each of you, in your deliberations upon the findings of guilt or innocence, must come to your own conclusion as to the voluntary nature of the statements. If you determine these statements were involuntary, you must refuse to consider them as evidence. You may accept the statements as evidence only if you determine that they were voluntary. You are also advised that if you find the statements were voluntary, any evidence introduced as to the voluntary or involuntary nature of the statements may be considered by you in determining the weight that you will give to the statements."

of the confession is the conclusion that his ruling, while subject to being overturned by the court members in their deliberations on accused's guilt or innocence, might properly be weighed by them as a factor in finally determining voluntariness. Phrased in other language, the instruction effectively says:

"Gentlemen, I have admitted this confession in evidence. My action should be taken into consideration by you in determining whether the confession was voluntary. However, it is not a conclusive consideration, and you must ultimately come to your own decision on the matter."

Permitting the fact finders to weigh the law officer's determination as evidence in deciding a factual issue whose final resolution clearly lies only within their competence brings to bear against the accused a consideration which he can in no way overcome. It leaves the military jury in the position of concluding only whether to review and overturn the ruling of one whose authoritative position and legal training are known to them and to which they normally accord great deference. And that the members would so construe the instruction is made more likely by their well-settled authority to upset the law officer's decisions in other areas. Code, supra, Article 51, 10 USC § 851.

It was for this reason that we paused to criticize the use of the questioned phrase in United States v Acfalle, 12 USCMA 465, 31 CMR 51, although we went on to order reversal in that case because of the law officer's failure meaningfully to submit an issue of voluntariness to the court-martial. Indeed, as early as 1955, in United States v Higgins, 6 USCMA 308, 20 CMR 24, at page 315, we flatly stated:

". . . As we observed in United States v Dykes, 5 USCMA 735, 19 CMR 31, the law officer's ruling that a statement was voluntarily made should not be relied on by court members as a predicate for a determination. . . . Instead, they are required to compute individually the extent to which testimony . . . [indicates] that the statement was involuntary. . . ."

The decision in *Higgins,* supra, expressly establishes that the law officer's ruling plays no part in the military jury's consideration of the issue of voluntariness. The propriety of that decision is unquestionable. The ruling of the military judge on admissibility at the most establishes only that there is a conflict in the evidence which the fact finders themselves must resolve. In effect, it means that the United States has presented evidence which tends to indicate the statement was in fact voluntary, while the accused has presented proof which indicates the contrary. The ruling itself merely establishes that there is enough to permit the court members to decide the issue, which is one solely and exclusively for their resolution. Thus, the law officer's decision has no value as evidence itself, and it is grossly unfair to lead the fact finders to believe that, because of his legal expertise, it should be so weighed.

Indeed, the Air Force itself has recognized that the instruction before us may be so interpreted by court members. On oral argument, we were informed that the objectionable advice is no longer a part of its suggested instructions. While it is, of course, eminently proper to eliminate portions of a form solely to avoid any possible question of its validity, I suggest that the fact such action was taken is also indicative of the probability that the instruction is misleading.

As I read my brothers' opinion, however, there does not appear to be any serious disagreement between us concerning whether the quoted portion of the law officer's advice is erroneous. They speak in terms of imprecision of language and the doubtful nature of the advice's phrasing, whereas I prefer to meet the problem head on by according the instruction what I believe to be its fair meaning. In short, I part company with their final conclusion that the advice, as a whole, informed the court that it was the ultimate, unfettered judge of the confession's voluntary nature.

In this connection, my brothers rely upon language in the instruction which advised the members that the law of-

182

ficer's ruling "merely place[d] . . . the statements before the Court" and that each member must individually "come to your own conclusion as to the voluntary nature of the statements." The difficulty which I encounter with this rationale is that, at most, the court is advised in one breath that it may consider the law officer's ruling as evidence of voluntariness and, in the next, that the ruling merely serves to place the confessions before them. Thus, on the whole, rather than to furnish the members with one definite standard by which their deliberations are to be guided, two measures—one proper and one erroneous—are provided. In such instances, we have uniformly refused to apply the doctrine of construing instructions as an entity.

In United States v Noe, 7 USCMA 408, 22 CMR 198, at page 410, a unanimous Court declared:

"The Government argues that taken as a whole the instruction did not prejudice the accused . . . . The law is well settled that the 'instruction as a whole' test is inapplicable where the court has been instructed both rightly and wrongly on a material issue. The correct instruction does not cancel out the prejudicial taint of the erroneous one. If two instructions are in direct conflict and one is clearly prejudicial the rule of the correct instruction as a whole does not apply."

To the same effect, see United States v Morphis, 7 USCMA 748, 23 CMR 212; United States v Alberico, 7 USCMA 757, 23 CMR 221; United States v Skonberg, 10 USCMA 57, 27 CMR 131; United States v Holloway, 10 USCMA 595, 28 CMR 161; United States v Walters, 10 USCMA 598, 28 CMR 164; and United States v McIntosh, 12 USCMA 474, 31 CMR 60.

This case presents an excellent example of why we have heretofore refused to apply the "instructions as a whole" concept when inconsistent rules are given to the fact finders. On the one hand, the law officer advises them that his ruling of admissibility may be considered as proof of voluntariness. On the other, he informs them that his ruling merely places the statements before the court. The question which we must answer is whether each member applied only the latter advice. And there is no way of ascertaining that they did so. In consequence, there is a fair risk that the court assumed voluntariness in part from the ruling on admissibility and, accordingly, reversal should be ordered. United States v Higgins, supra; United States v Noe, supra.

In sum, then, I would conclude that the law officer's instructions on voluntariness were prejudicially erroneous. My brothers' contrary belief leaves us in the position of determining in each future case whether the deficiency which we all recognize is deprived of harmful effect by consideration of the advice "as a whole." This *ad hoc* approach provides at best but slippery ground upon which to rest the legal efficacy of the instruction here involved. All ought to remember that the law officer's advice is designed to provide the legal framework upon which laymen are to reach their verdict in accordance with the facts which they alone determine to exist. As such, they should be precise, definite, and unambiguous. I suggest, therefore, that the other services would be well advised to follow the example of the Department of the Air Force and modify their form instructions in order to obviate the possibility of reversible action in future cases.

I would reverse the decision of the board of review.