UNITED STATES, Appellee,

v

ALBERT WILLIAMS, Private,
U. S. Army, Appellant

13 USCMA 208, 32 CMR 208

No. 15,834

July 27, 1962

*First Lieutenant David M. Gill* argued the cause for Appellant, Accused.

*First Lieutenant Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief were *Major Francis M. Cooper* and *First Lieutenant Jerome Nelson.*

## Opinion of the Court

QUINN, Chief Judge:

This is an appeal from a conviction by a general court-martial in Frankfurt, Germany, of a four-hour unauthorized absence and assault and battery upon a woman, in violation of Articles 86, and 128, respectively, Uniform Code of Military Justice, 10 USC §§ 886, 928.

Two of the assignments of error concern a pretrial statement by the accused which was admitted in evidence over defense counsel's objection. In the first, the accused contends the law officer erred in instructing the court-martial that his ruling on admissibility did not "conclusively establish the voluntary nature of the statement." We considered the same issue in United States v Cotton, 13 USCMA 176, 32 CMR 176. For reasons set out there, we hold that while the quoted words may be inappropriate the entire instruction fairly and correctly apprised the court-martial of its right to decide the question of voluntariness. In the

second assignment of error, the accused contends the law officer erred by instructing the court-martial on the voluntariness issue only at the time he admitted the pretrial statement into evidence. The instruction was not, as it is in the usual case, repeated in the final instructions given to the court-martial before it retired to deliberate on the findings.

Although accorded the opportunity to submit "additional instructions," defense counsel made no request for repetition of the earlier instruction on voluntariness. Now, the accused contends, in essence, that the issue is so material and important to the determination of his guilt or innocence that an instruction on voluntariness must be included in the final instructions. From his testimony on both the preliminary question of admissibility and on the merits, it would appear that he actually contested the truthfulness of his pretrial statement, not the propriety of its execution.[1] Cf. United States v Ledlow,

---

[1] The accused admitted he was fully informed of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. His testimony as to his

11 USCMA 659, 29 CMR 475. On that basis, if the failure to repeat the instruction on voluntariness is error, the error did not prejudice the accused. United States v Cotton, supra. In any event, if an instruction on a special issue is given at the time the issue arises, it need not be repeated in the final instructions in the absence of a request therefor. United States v Alfano, 152 F2d 395 (CA 3d Cir) (1945). It may be that the general rule should be applied with caution to the issue of voluntariness in the expectation that if the court-martial decides the matter against the accused it is likely to attach great weight to the confession or admission of guilt. We can assume, without deciding, that generally it is better to repeat the advice in the final instructions. Here, only about an hour elapsed between the instruction and time the court retired into closed session to deliberate on the findings. In the interim, the matter was discussed by both trial counsel and defense counsel in the final arguments. Argument of counsel, of course, is not a substitute for a necessary instruction. See United States v Smith, 2 USCMA 440, 9 CMR 70. However, it does focus the court-martial's attention upon an issue submitted to it by appropriate instruction. Cf. United States v Adams, 5 USCMA 563, 18 CMR 187. The circumstances here do not call for an exception to the general rule that only one instruction on a special issue is required.

The accused's last assignment of error charges trial counsel with improper argument on the sentence. The allegation needs a brief explanatory statement of the background of the argument.

On the evening of September 2, 1961, Herr Birkenhagen, his wife and daughter, returned home from a visit to the wife's parents in the adjoining town. A part of the road was so narrow they had to proceed in single file. As they walked along in this fashion, they were suddenly attacked by three American soldiers. Herr Birkenhagen was punched in the stomach, and the daughter was pulled to the other side of the road to a deep ditch. Mrs. Birkenhagen was hit so hard she "flew a part of the way" across the road and fell to the ground. Hearing her daughter yell "so terribly," she tried to get to her feet, but she was hit in the right temple and on the head. Just then a car came along. The soldiers fled. In his pretrial statement, the accused admitted he participated in the attack, but at trial he maintained he tried to dissuade his companions from "swing[ing]" on "the family," and that he did not engage in the assault. The court-martial found him guilty.

During the sentence proceedings, trial counsel introduced evidence of a previous conviction by a special court-martial for an assault on a German national, with intent to commit robbery. The accused's squadron leader and the platoon leader testified in his behalf. The former said the accused was "about average" in the performance of his duties in field exercises; the latter described the accused as "above average." Both witnesses indicated the accused "efficiently" performed his general duties. Arguing on the sentence, defense counsel said:

". . . Now during the earlier examination of the court members, I asked if any of you had sat as members of special court-martials. You all indicated you had. . . . The reason I am bringing this out is because, here, we have a sentence where the maximum punishment as to confinement is seven months, and you know why the accused is sitting in a general court-martial? Guilt by association. You heard all during the trial about other people and other reasons for making the statement is as follows: "I figured . . . if . . . [the investigating agent] sent a statement back to my company commander saying I was suspected of rape, robbery and attempted murder, . . . that I would be charged with that and I didn't want the charges to be brought against me on that ground" so I "decided if I made the statement which the CI agent, Sward, told me, the charges would be brought down to simple assault." The truthfulness *vel non* of the statement was argued by both defense counsel and the prosecutor.

incidents, and people that he ran around with, and that's why you gentlemen have been called here to waste your morning away at a general court-martial for this offense.

Now, someone's playing God with this accused's future. I ask you, gentlemen, not to do so. I ask you to take the maximum imposable punishment, weigh matters of mitigation and aggravation and this individual's needs against it, and give him an appropriate sentence. I, frankly, think that this should have gone to a lower court level. I think your sentence should so reflect that it should have.

. . . . .

". . . An assault and an AWOL, here, is not that type of sentence for which you should give a punitive discharge, and you, in your judgment, know that, and if you do give him a punitive discharge, you are doing the Army and the service no good. Two men from his unit have come in here and said that he is a good soldier; that he does his job. Well, let's let him go back and do his job. Let this court-martial and this confinement he has already served be a lesson for him never to get into trouble again."

Trial counsel opposed defense counsel's plea for leniency with a number of counter arguments. Among other things he maintained the present assault showed the accused had not learned "a lesson" from his previous conviction. He further contended that the sentence powers of a special court-martial had no bearing on this court-martial. His concluding argument and what followed provide the basis for the accused's assignment of error:

"[TC:] The Government asks that you consider all the factors pertinent to the particular case when you adjudge a sentence. But the Government thinks that this is a serious matter and that the fact that this is at this level of court, perhaps, might indicate that it is a serious matter. The Government feels that when you adjudge all the facts and circumstances, that an adequate sentence will be returned in this case.

"LO: Defense have anything further?

"DC: No, sir. Just—I object to trial counsel's comment on why this is at this level, as an imposition of some type of influence on this court. There is no such reason known.

"LO: I agree with this. It is purely for the court to determine what sentence is to be imposed in this case, based upon the evidence which has been presented.

"Now, gentlemen, you are about to deliberate and vote on the sentence in this case. No part of a court-martial proceeding requires the exercise of a wiser discretion or the discharge of a graver responsibility than the adjudging of a proper sentence.

. . . . .

"It is to be borne in mind that the maximum sentence authorized is a ceiling on your discretion. You may adjudge the maximum or any lesser legal sentence. It should be emphasized that you and you alone are responsible for determining, within the limits prescribed by law, a sentence you consider appropriate in this case. . . . It should be a punishment appropriate to the individual accused, and to the particular case; not one based on any stereotyped or mechanically applied norms for similar type cases.

. . . . .

"When the court closes to deliberate and vote on the sentence to be adjudged, only the members of the court will be present. Deliberation may properly include full and free discussion. The influence of superiority in rank shall not be employed in any manner in an attempt to control the independence of the members in the exercise of their judgment."

Relying on United States v Lackey, 8 USCMA 718, 25 CMR 222, appellate defense counsel contends that trial counsel's remarks "contain a thinly veiled indication" that the convening authority "desired" the accused be eliminated from the service with a puni-

tive discharge. This case, however, is distinguishable from *Lackey*. Here, it was defense counsel, not trial counsel, that invited the comparison between the sentence powers of a special court-martial and those of a general court-martial, which provides the only indication of the convening authority's desires. Trial counsel's remarks constitute a response to the defense argument; and the purported implication of command interest in a punitive discharge is so elliptical as to be tenuous. In any event, the immediate and specific statement by the law officer that it was for the court-martial to determine the sentence, and his succeeding instructions on the factors the court-martial could, and should, consider in imposing sentence were sufficient to eliminate any risk of prejudice by reason of trial counsel's comments. United States v Carpenter, 11 USCMA 418, 29 CMR 234.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

In United States v Cotton, 13 USCMA 176, 32 CMR 176, I set forth at length my reasons for concluding that an instruction to the effect that the law officer's ruling "does not conclusively establish" the voluntary nature of an accused's pretrial statement was prejudicially erroneous. There I declared:

> "Permitting the fact finders to weigh the law officer's determination as evidence in deciding a factual issue whose final resolution clearly lies only within their competence brings

to bear against the accused a consideration which he can in no way overcome. It leaves the military jury in the position of concluding only whether to review and overturn the ruling of one whose authoritative position and legal training are known to them and to which they normally accord great deference. And that the members would so construe the instruction is made more likely by their well-settled authority to upset the law officer's decisions in other areas. Code, supra, Article 51, 10 USC § 851."

In this case, the risk that the court members so read the law officer's advice is made doubly apparent by the fact that they were instructed only that "Each of you, in your deliberation upon the findings of guilt or innocence, *may* come to your own conclusion as to the voluntary nature of this statement," whereas, in Cotton, supra, the law officer stated that each court member *"must* come to your own conclusion" concerning the same subject. (Emphasis supplied.) By his use of permissive language alone, the law officer issued an open invitation to the court members to consider his ruling as positive evidence that the confession was in fact voluntary and to vote only on whether that ruling should be overturned. Thus, it is even clearer here that we should reverse and order a rehearing, and I must, therefore, express my continued disagreement with my brothers' conclusion that the law officer's advice was not prejudicially erroneous.

As I would reverse on the basis of the instruction on voluntariness, I need express no view with respect to the remainder of the issues before us.