UNITED STATES, Appellee

v

WILLIAM R. EAVES, Airman Third Class, U. S. Air Force, Appellant

15 USCMA 204, 35 CMR 176

No. 17,961

December 31, 1964

*Major Milton E. Kosa* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman*.

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

QUINN, Chief Judge:

A special court-martial convicted the accused, on his plea of guilty, of specifications alleging that on January 25, 1964, at the Shaw Air Force Base Exchange, he committed indecent assaults by "rubbing his hand" on specified parts of the person of three separate women, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court adjudged a sentence which included a bad-conduct discharge and confinement at hard labor for three months.[1]

Although no objection was made at trial, while the case was undergoing review in the field, defense counsel filed a brief in which he challenged certain actions of the trial counsel during the sentence procedure as improperly intimating the attitude of the convening authority on the punishment that should be imposed. The matter was considered in the post-trial review by the staff judge advocate to the general court-martial authority and by the board of review. Both resolved the issue against the accused. We are asked to overrule these determinations.

By stipulation, Captain Linus B. Root, a psychiatrist, testified for the defense. He examined the accused on February 18, 1964. In his opinion, the accused possessed a passive-aggressive personality, which was described as a character and behavior disorder. Dr. Root believed the accused suffered from "emotional isolation and shallowness," with indications of immaturity of impulse control and social judgment. He recommended that the accused be "cleared for administrative action" because the character disorder made him unsuitable for continued military service.

After Captain Root testified, the defense called the accused's squadron

---

1. While the case was pending review, five of the six members of the court-martial, on accused's request, recommended that the bad-conduct discharge not be executed, but the accused be separated under the provisions of Air Force Regulation 39–16, Discharge for Unsuitability, March 17, 1959, to allow the accused to realize in civilian life a "potential" for rehabilitation.

commander, Captain Oliver J. Nasby, Junior, as a witness. He was the accuser.

On direct examination, Captain Nasby testified he had read Dr. Root's report, and as a result he wanted "to recommend that . . . [the accused] be returned to the squadron for administrative discharge under Air Force Regulation 39–16." He believed a bad-conduct discharge would be inappropriate punishment. Defense counsel concluded his examination of Captain Nasby with a statement. "We will both grant," he said, "that you are not telling the court what to do, nor am I, (to members of court) but the squadron commander's recommendations are appropriate for your consideration, and that is the reason Captain Nasby is here."

Under cross-examination by trial counsel, Captain Nasby admitted he did not believe the accused should go "scot-free," but he thought the accused "shouldn't carry the stigma through life of a bad conduct discharge." His testimony continued as follows:

"Q. Then, Captain Nasby, why didn't you approach the base commander who, of course, forwarded these charges to this court, and ask that these charges be dropped rather than go through the procedure of having a court-martial here and come up and say, 'Well, I don't think the man should be court-martialed'?

"DEFENSE COUNSEL: I will object to that. The witness has already testified he thought the man must be court-martialed and he has addressed his recommendation to the question of discharge. I submit that the question has already been asked and answered.

"PRESIDENT: I am a little confused myself at this point and I think, subject to objection by any member of the court, the objection is overruled. I would like to hear the reasons, the answer to this question myself.

"Q. All right, sir. Let me see, Captain Nasby, my question was why, after this psychiatric examina-

tion was brought back and you determined that the man should have been sent to a discharge board, why did you not at that time approach the base commander, who is the convening authority in this matter, and ask that the charges be dropped?

"A. Because at this last minute, arrival at this station was Friday night, and things had already been set up for today.

. . . . . .

"Q. Sir, you made a recommendation to the court concerning the type of discharge this man ought to be given. You also stated you thought he should be tried. To me that is a little consistent [sic]. Would you also give us a recommendation as to the punishment this man should be given? He has been found guilty, he has pleaded guilty.

"A. I have no recommendation for punishment. Punishment enough would be in itself in an administrative general discharge.

"Q. Sir, I am sure you are aware that this is a criminal offense under the Uniform Code of Military Justice, otherwise it wouldn't be here. You still feel from the psychiatric report which made this statement concerning the man's mental ability, you still feel it is not serious enough to warrant trial by court-martial and punishment and possible discharge by court-martial? I am not speaking of administrative discharge.

"A. I have thought this all over and I am recommending for your consideration in this court that he be given an administrative discharge under Air Force Regulation 39–16."

In his argument on the sentence, defense counsel adverted to the accused's psychiatric evaluation and to Captain Nasby's testimony. He emphasized that Dr. Root had recommended an administrative discharge and that Captain Nasby, as the accused's squadron commander, had given "assurance that he will discharge" the accused under the appropriate regulations. He urged the court-martial not to put a "millstone" around the neck of one as young as

the accused, which would remain with him "for the rest of his life." Trial counsel pressed an opposite position upon the court. He advanced several counterarguments for a bad-conduct discharge. The part of his remarks now attacked by the accused is as follows:

"As it was fairly obvious, the testimony of Captain Nasby, with all due respect to Captain Nasby, was a surprise. It is hard for me to see how a man can completely have a change of mind such as he showed here and let this go ahead and proceed as it has. *Not only does a squadron commander recommend what action he might feel to be necessary, but in a court-martial he offers the facts to his commander, in this case to Colonel Harp and Colonel Harp, through the Judge Advocate, determines what action should be brought against the man, so when this first came up, evidently Captain Nasby was more than certain this man had committed an act which should be punished by special court-martial.* It is my contention that this theory is still the same. Captain Nasby may not have that theory now, but I feel that any normal, right-thinking person would have it, and that is about the only thing you can say for it. The man has committed an indecent act, that no one approves, that no one condones. The women on whom the act was committed certainly didn't consent to it. It was certainly against their will. Therefore, he must be punished. Adequate punishment in this case is primarily that he be separated from the Air Force. We can't have people like that running around. The defense has brought out the fact that he has a character and behavior disorder. If he has such a disorder, we don't want him in the Air Force. But he has committed a crime. It isn't that he has some character and behavior disorder, that he can't succeed in the Air Force, can't do his job right and therefore should be separated under AFR 39–16. It is not a situation like that." [Emphasis supplied.]

This Court has always been alert and sensitive to manifestations of command influence in the judicial process. Whether deliberate or innocent, every action which brought before the court-martial a command practice, policy or opinion which could have prejudiced the court members against the accused has been condemned by this Court. See United States v Boese, 13 USCMA 131, 32 CMR 131; United States v Kitchens, 12 USCMA 589, 31 CMR 175; United States v Lackey, 8 USCMA 718, 25 CMR 222. Every doubt as to the risk of harm has been resolved in favor of the accused. United States v Kitchens and United States v Lackey, both supra. Notwithstanding these considerations, we perceive no basis upon which to condemn trial counsel's actions in this case as representations of the convening authority's attitude or desires as to the sentence.

Looking first at the cross-examination of Captain Nasby, we note defense counsel interposed no objection on the ground of improper allusions to command views. Instead, he objected merely because the question was repetitious. Defense counsel's interpretation of the nature of trial counsel's examination is a fair indication of the probable light in which his remarks were viewed by the court members. United States v Lackey, supra, at page 720. See also United States v Gordon, 14 USCMA 314, 319, 34 CMR 94. But even if we exclude defense counsel's gloss, the examination cannot be understood as suggesting the convening authority's desire that a bad-conduct discharge be adjudged by the court.

Trial counsel was obviously attempting to probe the strength of Captain Nasby's representation that it would be better to separate the accused by administrative action, than with a punitive discharge. If Captain Nasby's recommendation was the result of his considered judgment, it might be expected that, as the accused's squadron commander, he would take such steps as were available to substitute administrative action for the pending court-martial proceeding.

Perhaps the inquiry could have been conducted without specific mention of the base commander, but the fact that he was mentioned did not suggest either his personal or official desire for any particular punishment. The bare bones comment on the commander's reference of the charges to trial carried no imputation that he expected, or hoped, the sentence would be of a particular kind. Just as the convening authority's appointment of trial counsel and the court members does not constitute them "instruments for the imposition" of his will, his reference of the charges to trial cannot be construed as a projection of his wishes into the case. See United States v Olson, 7 USCMA 242, 246–247, 22 CMR 32. On the contrary, a specific statement that the charges have been referred to trial by the convening authority is part of the prescribed trial procedure. See Manual for Courts-Martial, United States, 1951, Appendix 8a, Guide—Trial Procedure, at page 507.

Turning to trial counsel's argument, the accused contends the underscored sentence is similar to that condemned in United States v Lackey, supra, at pages 719–720. There, trial counsel argued as follows:

"'. . . But I contend that it's your solemn duty and responsibility and undoubtedly the people who brought these charges and referred him to trial thought it was your responsibility to see that Private Lackey was put out of the service and put out of the service with a punitive discharge with a confinement which would be commensurate with the two offenses of AWOL which he has committed.' "

Defense counsel construed the state-ment as a representation "'that the convening authority thought that a punitive discharge was appropriate and that's why it [the case] is here before a general court.' "

We have already observed that defense counsel in this case did not interpret trial counsel's ■■■■ ■ remarks as suggesting the opinion or desire of the convening authority. More importantly, to cull the underscored portion from its regular position in trial counsel's argument distorts its meaning. Trial counsel plainly intended no more than a refutation of defense counsel's contention that an appropriate sentence was one which would not include a bad-conduct discharge. His argument did not exceed the intention. Although the matter is one resolvable only according to the particular facts, the present case is more like United States v Williams, 13 USCMA 208, 32 CMR 208, than Lackey. The following excerpt from our opinion in Williams, at page 212, is equally applicable here:

". . . Trial counsel's remarks constitute a response to the defense argument; and the purported implication of command interest in a punitive discharge is so elliptical as to be tenuous. In any event, the immediate and specific statement by the law officer that it was for the court-martial to determine the sentence, and his succeeding instructions on the factors the court-martial could, and should, consider in imposing sentence were sufficient to eliminate any risk of prejudice by reason of trial counsel's comments."

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.