UNITED STATES, Appellee,

v.

David A. CLARK, Private, United States Army, Appellant.

No. 36,420.
CM 436102.

U. S. Court of Military Appeals.

July 23, 1979.

For Appellant—*Captain James J. Parwulski* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Major D. David Hostler* (on brief).

For Appellee—*Captain James W. Hewitt, Jr.* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Robert B. Williams* (on brief); *Major Michael B. Kennett.*

Opinion

COOK, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial of arson and housebreaking, in violation of Articles 126 and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 926 and 930. We granted review to determine if the military judge's instructions to the court members on the issue of the voluntariness of appellant's pretrial statement was prejudicial.

The issue is raised in the following context. During an Article 39(a) session,[1] appellant challenged the admissibility of his pretrial statement. Special Agent Behr, Criminal Investigation Division (CID), testified that, prior to questioning, appellant was advised of his Article 31/*Miranda-Tempia*[2] rights; he waived those rights and consented to be questioned. During the interview, appellant was not threatened in any manner. Although he initially denied any implication in the offenses, he subsequently confessed to them and executed a written statement. Appellant testified that he confessed because he was "harrassed." He further stated he was told he would not be sent to jail. Upon being questioned by the military judge, appellant asserted that he signed the written statement because he was being pressured by his interrogators. Chief Warrant Officer Griffiths was called in rebuttal and testified that he was present during a portion of appellant's interview and, also, that he advised appellant of his rights during the interrogation. The military judge ruled that the pretrial statement was admissible.

Appellant elected to litigate the voluntariness of his confession before the court members. Special Agent Behr testified, before the members, in substantial accord with his testimony during the Article 39(a) session. Prior to presentation of evidence on the issue by the defense, the military judge explained to the court members that the defense was contesting the voluntariness of the pretrial statement. The defense then presented the testimony of Chief Warrant Officer Griffiths, who testified as to appellant's negative response to various questions. Appellant testified that he had consumed a fifth of whiskey on the night prior to the interrogation and that he had originally denied committing the offenses charged. He renewed his assertion that he executed the statement because he was being harassed. He further asserted that he had signed the statement for the purpose of obtaining his release from the CID office. Prior to submitting the statement, the military judge instructed the members, in relevant part, as follows:

Now, for the record, I am going to make a ruling, now, and I will give you further instructions, in just a moment, as to what it means. But I want to state that *I am convinced, and find that the statement was not obtained or induced by the use of a threat, promise, inducement, duress, or physical or mental abuse, amounting to coercion, unlawful influence, or unlawful inducement.*

And I find that, prior to making the statement, the person who took the statement was subject to the Uniform Code of Military Justice, and, indeed, advised the accused, of: The nature of the offense of which he was suspected or accused; that he had the right to remain silent; that any statement he made may be used as evidence against him in a criminal trial; that he had the right to consult with Counsel, and to have Counsel present with him, during questioning; and that he could retain Civilian Counsel at his own expense, or, if he wanted, Military Counsel would be appointed for him, at no expense to him.

*And, after being so advised, the accused freely, knowingly, intelligently, and specifically waived his right to the assistance of Counsel, and the right to remain silent.*

Now, that is my ruling, and the statement will be read to you, in just a moment. But you are advised, that my ruling, receiving into evidence Prosecution Exhibit 2, which is a pretrial statement of the accused, is final, only on the question of admissibility. In other words, I am just determining that it's admissible, now. It's—and it's placed before you Members of the Court.

I do not decide the issue of voluntariness. You will have to decide that it is

---

1. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. Article 31, UCMJ, 10 U.S.C. § 831; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

voluntary, and, in other words, this issue of voluntariness is a factual matter for your consideration, which you must decide, bearing in mind that the Prosecution has the burden of proof, to establish the voluntariness of this statement, beyond a reasonable doubt. Each of you, in your deliberations upon the Findings of guilt or innocence, will have to come to your own conclusion, as to whether this statement was voluntary. *You must not be influenced by my ruling, in any way, because you, alone, have the independent responsibility for deciding this issue.*

Now, you may accept the statement as evidence, only if you, yourselves, determine, beyond a reasonable doubt, that the statement was voluntary. Otherwise, you must reject the statement, and disregard it as evidence in the case.

As you have to be satisfied, that the accused did not make the statement, for the purpose of—of obtaining permission to leave. In other words, the accused, upon questioning, said that he signed the statement, only for—in order that he might be able to leave. Well, you have to be satisfied, beyond a reasonable doubt, that he did not sign the statement for that particular reason.

Now, if you are satisfied, beyond a reasonable doubt, that the statement was voluntary, as I will explain this term to you later, you must consider the evidence regarding the circumstances under which the statement was made, in determining what weight, if any, you will give to the statement.

Now, as I say, I'll advise you in greater detail, during our final instructions, but you understand, at this time, that the statement which the Prosecutor is about to read to you is admissible. But, in addition to my admitting it, you have to be satisfied, beyond a reasonable doubt, that he made it voluntarily. Is that clear? [No audible response.] All right. Trial Counsel, you may read the statement to the court. Prosecution Exhibit 1—just hand it to the court. [The Trial Counsel complied.] And Prosecution Exhibit 2—hand it, later, but just read the statement of the accused to the court.

(Emphasis added.) Later, in the course of the instructions in regard to the deliberations as to the issue of guilt, the military judge advised the court members on the matter of the voluntariness of the confession. He noted that his ruling admitting the confession into evidence did not decide the issue of voluntariness. He specifically repeated his admonition that, "You must not be influenced by my ruling, in any way, because you, alone, have the independent responsibility for deciding this issue." The defense counsel argued that the statement was not true and appellant only confessed because of the pressure being asserted upon him.

On appeal, appellant submits that the military judge's statement that he had found no "threat, promise, inducement, duress, or physical or mental abuse" which would constitute "coercion, unlawful influence or unlawful inducement," and that the accused had "waived his right[s]," requires reversal. The United States Army Court of Military Review concluded the reference to these findings was improper, but held the accused had not been prejudiced. *United States v. Clark*, 5 M.J. 785 (A.C.M.R.1978).

■ Appellant correctly notes that, under military practice, the judge must make a preliminary determination of admissibility, and the court members, if the accused so desires, must resolve the issue of factual voluntariness. *United States v. Mewborn*, 17 U.S.C.M.A. 431, 38 C.M.R. 229 (1968); para. 140a (2), Manual for Courts-Martial, United States, 1969 (Revised edition). In *United States v. Cotton*, 13 U.S.C.M.A. 176, 180, 32 C.M.R. 176, 180 (1962), a law officer (now military judge) instructed the court members that his ruling, which admitted a pretrial statement of the accused into evidence, did not " 'conclusively establish the voluntary nature of the statements.' " The defense argued that the quoted instruction improperly influenced the court members as to their determination of factual voluntariness. While criticizing the instruction because it did not plainly state that the law

officer's ruling did not decide the issue of voluntariness, the Court held that accused had suffered no prejudice because the law officer also instructed the members "that his ruling 'merely place[d] the statements before' them." *Id. Accord, United States v. Williams*, 13 U.S.C.M.A. 208, 32 C.M.R. 208 (1962); *see United States v. Higgins*, 6 U.S.C.M.A. 308, 20 C.M.R. 24 (1955). The holding in *Cotton* is consistent with the more general principle of law that incorrect or incomplete instructions do not require reversal unless they are prejudicial to an accused. *United States v. Giordano*, 15 U.S.C.M.A. 163, 35 C.M.R. 135 (1964).

Turning to the facts of the present case, we note that the military judge instructed the members, on more than one occasion, to ignore his ruling and to independently resolve the issue of voluntariness. Although the military judge mentioned various factual issues related to his preliminary determination of admissibility, the court members were clearly advised that they must resolve the factual issues involved in their determination of voluntariness. Additionally, he instructed the members to "disregard any comment or statement made by me" which implied an opinion as to the guilt or innocence of the appellant. Such an instruction removes any possibility of prejudicial impact from the military judge's comments. *See United States v. Gray*, 9 U.S.C.M.A. 208, 25 C.M.R. 470 (1958). Under the circumstances, we are convinced that appellant suffered no prejudice.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs in the result.

PERRY, Judge (dissenting):

As I am unable to agree with my colleagues in their disposition of this case, I respectfully dissent.

The Supreme Court of the United States, in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), held that a criminal defendant has a constitutional due process right to litigate, at some stage of his criminal trial, whether his pretrial statement, sought to be introduced against him by the prosecution, had been voluntarily rendered and to have a fair hearing and reliable determination on that issue uninfluenced by the truth or falsity of the statement itself. *See United States v. Fayette*, 388 F.2d 728 (2nd Cir. 1968); *United States v. Inman*, 352 F.2d 954 (4th Cir. 1965). The implementation of this decision in military practice is found in paragraphs 57*g* and 140 *a*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). The latter provision makes it clear that court-martial evidentiary rules have incorporated the so-called "Massachusetts rule" effectuating the *Jackson* mandate—that there be a preliminary hearing out of the presence of the jury and, assuming the judge's decision is adverse to the defendant, a final appraisal of voluntariness made by the jury.[1] *See United States v. Inman, supra; see also Clifton v. United States*, 125 U.S.App.D.C. 257, 371 F.2d 354 (1967), *cert. denied*, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967).

It is at once obvious that in judicial systems such as this one, it is imperative that the jurors' discretion to weigh the evidence and to freely make this determination be wholly unfettered and untainted by collateral influence. To this end, courts uniformly have held that it is improper for the judge in any way to make known to the jury his findings in his preliminary determination. *See United States v. Cotton*, 13 U.S.C.M.A. 176, 32 C.M.R. 176 (1962); *United States v. Williams*, 13 U.S.C.M.A. 208, 32 C.M.R. 208 (1962); *United States v. Standing Soldier*, 538 F.2d 196 (8th Cir. 1976), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *United States v. Bear*

1. Compare with the "orthodox view" of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)—that the voluntariness of a pretrial statement is a matter of law exclusively, to be resolved finally by the judge and that,

therefore, no instruction on voluntariness is to be given to the jury. *See United States v. Fayette*, 388 F.2d 728 (2nd Cir. 1968); *United States v. Inman*, 352 F.2d 954 (4th Cir. 1965).

*Killer*, 534 F.2d 1253 (8th Cir. 1976), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Fayette, supra; Clifton v. United States, supra; United States v. Inman, supra.* As the Court explained in *Bear Killer*:[2]

> The instruction, which informs the jury that in-custody statements are in law and in fact voluntary, renders superfluous any evidence relative to the conditions under which the statements were given. It makes impossible, as a general rule, the fulfillment of the jury's duty to give the statements such weight as they deserve under all the circumstances.

> \* \* \* \* \* \*

> [F]airness requires that the court not disclose to the jury its finding of voluntariness. *See United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970); *Ellis v. Fitzharris*, 407 F.2d 799, 803 n.8 (9th Cir. 1969); *United States v. Fayette*, 388 F.2d 728, 736 (2nd Cir. 1968). Disclosure places upon the in-custody statements the imprimatur of the court which, *it must be presumed, influences the jury. See Lego v. Twomey, supra,* 404 U.S. [477] at 483–484, 92 S.Ct. [619] at 623–624, 30 L.Ed. 2d [618] at 623–624 [1972].

Additionally, military trial judges have been specifically admonished against such revelations to the members of the court. For instance, paragraph 5–2 of the Military Judges' Guide, Department of the Army Pamphlet 27–9 (1969), pointedly cautions:

> Although court members are apprised of admissibility, the military judge's specific factual findings should be announced

only during an out-of-court hearing or side bar conference.

Notwithstanding all this, however, the trial judge in the present case charged the members that he was "*convinced* . . . that the statement was not obtained or induced by the use of a threat, promise, inducement, duress, or physical or mental abuse, amounting to coercion, unlawful influence, or unlawful inducement" and that after being fully warned of his legal rights, "the accused freely, knowingly, intelligently, and specifically waived his right to the assistance of Counsel, and the right to remain silent." (Emphasis added).

The majority, while acknowledging the error of the trial judge's instruction, nonetheless merely tests the instruction for prejudice to the appellant, and finds none.[3] I submit that such a test is inappropriate. In *United States v. Bear Killer, supra* at 1259, the court reasoned:

> The instruction [that the judge had found the statement voluntary but that it was up to the jury to determine the credibility and the weight to be given such statement] should not have been given and is not to be given in the future. But because we have not heretofore spoken on the matter, we consider whether the error was harmless.

In *United States v. Standing Soldier, supra*, the same court later that year expressly noted that *Bear Killer's* direction "that the instruction 'is not to be given in the future' is not applicable here,"[4] underlining the warning that in such cases, where the trial bench was on notice by virtue of these two

---

**2.** *United States v. Bear Killer*, 534 F.2d 1253, 1258–59 (8th Cir. 1976), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976) (emphasis added).

**3.** The United States Army Court of Military Review did likewise. *United States v. Clark*, 5 M.J. 785 (A.C.M.R.1978). These judges find solace in the remainder of the instructions, set out fully in Judge Cook's opinion, and I suppose, in the notion that jurors are presumed to follow the judge's instructions. I find none. Rather, I believe that when the judge instructed the court that he was "convinced" of all the

facts necessary to conclude that the statement was voluntary he rendered "superfluous any evidence relative to the conditions under which the statements were given" and any instructions that they could determine this issue anew. *United States v. Bear Killer, supra* at 1258–59. To conclude to the contrary is to delude oneself as to psychological reality.

**4.** *United States v. Standing Soldier*, 538 F.2d 196, 204 n.9 (8th Cir. 1976), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

decisions not to give the instruction in question, the court would not test for prejudice.[5]

It now has been 17 years since this Court first admonished trial judges not to give an instruction such as this, which risks influencing the jury's province in determining the voluntariness of an accused's statement. *See United States v. Williams, supra; United States v. Cotton, supra.* Under these circumstances, a test for prejudice no longer is appropriate in this area fraught with mischief in the midnight of jurors' subconscious. *See United States v. Standing Soldier, supra; United States v. Bear Killer, supra.*

In *United States v. Shackelford*, 2 M.J. 17, 19–20 (C.M.A.1976), this Court through Chief Judge Fletcher observed:

> [I]t is common among jurors "to attempt to tune in on and adopt a trial judge's appraisal of the facts . . .. Extreme caution must be observed to prevent a joinder of an exposure of a trial judge's view of the facts and a juror's natural curiosity about an affinity for that view from causing an abandonment of each juror's personal factfinding responsibility." [*United States v. Clower*], 23 U.S.C.M.A. [15] at 18, 48 C.M.R. [307] at 310 [(1974)].

The same theme was sounded by Judge Ferguson in his dissent in *Cotton*, directed specifically to this issue:[6]

> The necessary inference from the emphasized statement of the law officer regarding the effect of his admission of the confession is the conclusion that his ruling, while subject to being overturned by the court members in their deliberations on appellant's guilt or innocence, might properly be weighed by them as a factor in finally determining voluntariness.

\*   \*   \*   \*   \*   \*

> Permitting the fact finders to weigh the law officer's determination as evidence in deciding a factual issue whose final resolution clearly lies only within their competence *brings to bear against the appellant a consideration which he can in no way overcome.* It leaves the military jury in a position of concluding only whether to review and overturn the ruling of one whose authoritative position and legal training are known to them and to which they normally accord great deference.

In the years since *Cotton* was decided, the Congress of the United States, this Court, and others have taken significant steps to elevate even more the reality and the perception of the military trial judge as a figure of authority. At this point in the development of military justice, this Court should no longer perpetuate the fiction that when a trial judge instructs the court that he is "convinced" of all the facts required to render the appellant's pretrial statement voluntary, there is no fair risk that the court members would be influenced thereby in exercising their responsibility of determining the voluntariness of the statement beyond a reasonable doubt. The impressive and authoritative cloak of the judicial officer and all the power it represents simply belies this naive notion of innocence.

---

**5.** The court also tested for prejudice to the accused from the erroneous instruction in *United States v. Fayette, supra.* However, it did so only because, in that circuit, where the orthodox view of *Jackson v. Denno, supra,* is applied, the instruction was harmless surplusage and "gave [the accused] a second chance not required by *Jackson v. Denno* . . ." *Id.* at

735. In the military, where the Massachusetts rule is practiced, however, the instruction is not mere surplusage and, therefore, must be legally correct in all respects.

**6.** *United States v. Cotton*, 13 U.S.C.M.A. 176, 181–2, 32 C.M.R. 176, 181–2 (1962) (emphasis added).